# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COPY

CHARLES BOYLE,                          )
                                        )
        Plaintiff,                      )
                                        )
    vs.                                 )   No. 09 C 1080
                                        )
UNIVERSITY OF CHICAGO POLICE            )
OFFICER LARRY TORRES,                   )
STAR #1028, UNIVERSITY OF               )
CHICAGO POLICE OFFICER                  )
CLARENCE E. MOORE, STAR #1012,          )
UNIVERSITY OF CHICAGO POLICE            )
OFFICER GALARZA, UNIVERSITY OF          )
CHICAGO POLICE OFFICER                  )
KWIATKOWSKI, UNIVERSITY OF              )
CHICAGO POLICE OFFICER                  )
GILLESPIE, UNIVERSITY OF                )
CHICAGO, CHICAGO POLICE OFFICER         )
V. DARLING, STAR #19135,                )
CHICAGO POLICE OFFICER C.E.             )
MARTIN, STAR #17246, AND THE            )
CITY OF CHICAGO,                        )
                                        )
        Defendants.                     )

        The deposition of OFFICER CARL MARTIN,
called by the Plaintiff for examination, taken pursuant
to notice and pursuant to the Federal Rules of Civil
Procedure for the United States District Courts
pertaining to the taking of depositions, taken before
Michelle M. Scalise, Certified Shorthand Reporter, at
300 West Adams Street, Suite 330, Chicago, Illinois,
commencing at 10:37 a.m. on the 28th day of October,
A.D., 2009.

**JENSEN REPORTING**

205 West Randolph Street, Suite 510
Chicago, Illinois 60606
Phone: (312) 236-6936
Fax: (312) 236-6968
www.jensenreporting.com



JENSEN REPORTING
Whenever you need it. Whatever it takes.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES BOYLE,                              )
                                            )
            Plaintiff,                      )
                                            )
      vs.                                   ) No. 09 C 1080
                                            )
UNIVERSITY OF CHICAGO POLICE                )
OFFICER LARRY TORRES,                       )
STAR #1028, UNIVERSITY OF                   )
CHICAGO POLICE OFFICER                      )
CLARENCE E. MOORE, STAR #1012,              )
UNIVERSITY OF CHICAGO POLICE                )
OFFICER GALARZA, UNIVERSITY OF              )
CHICAGO POLICE OFFICER                      )
KWIATKOWSKI, UNIVERSITY OF                  )
CHICAGO POLICE OFFICER                      )
GILLESPIE, UNIVERSITY OF                    )
CHICAGO, CHICAGO POLICE OFFICER             )
V. DARLING, STAR #19135,                    )
CHICAGO POLICE OFFICER C.E.                 )
MARTIN, STAR #17246, AND THE                )
CITY OF CHICAGO,                            )
                                            )
            Defendants.                     )

            The deposition of OFFICER CARL MARTIN,
called by the Plaintiff for examination, taken pursuant

to notice and pursuant to the Federal Rules of Civil

Procedure for the United States District Courts

pertaining to the taking of depositions, taken before

Michelle M. Scalise, Certified Shorthand Reporter, at

300 West Adams Street, Suite 330, Chicago, Illinois,

commencing at 10:37 a.m. on the 28th day of October,

A.D., 2009.

Electronically signed by Michelle Scalise (101-420-547-2376)                    e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

## Page 2

1    APPEARANCES:
2    ED FOX & ASSOCIATES
    MR. JONATHAN R. KSIAZEK
3    300 West Adams Street
    Suite 330
4    Chicago, Illinois 60606
    Phone: (312) 345-8877
5
    On behalf of the Plaintiff;
6
7    HINSHAW & CULBERTSON, LLP
    MS. CONNIE C. HEGGIE
8    222 North LaSalle Street
    Suite 300
9    Chicago, Illinois 60601
    Phone: (312) 704-3000
10
    On behalf of the Defendants University of
11    Chicago Police Officers Larry Torres,
    Clarence E. Moore, Galarza, Kwiatkowski,
12    Gillespie, University of Chicago;
13    CITY OF CHICAGO, DEPARTMENT OF LAW
    MS. HELEN GIBBONS
14    30 North LaSalle Street
    Room 900
15    Chicago, Illinois 60602
    Phone: (312) 744-3982
16    Email: helen.gibbons@cityofchicago.org
17
18      * * * * * *
19
20
21
22
23
24

## Page 3

1       I N D E X
2    WITNESS           PAGE
3    OFFICER CARL MARTIN
4     Direct Examination by Mr. Ksiazek .... 4
5     Cross-Examination by Ms. Heggie ...... 47
6
7
8       E X H I B I T S
9    MARTIN DEPOSITION EXHIBIT      PAGE
10     No. 1 ............................. 31
11     No. 2 ............................. 34
12
13
14
15
16
17
18
19
20
21
22
23
24

## Page 4

1       (Witness sworn.)

2    WHEREUPON:

3       OFFICER CARL MARTIN,

4    called as a witness herein, having been first duly

5    sworn, was examined and testified as follows:

6       DIRECT EXAMINATION

7    BY MR. KSIAZEK:

8     Q. Good morning.

9      Will you please state your name, spelling your

`10:37:29`   10    last name for the record?

11     A. Carl Edward Martin, M A R T I N.

12     Q. And, Mr. Martin, have you ever had your

13    deposition taken before?

14     A. Yes.

`10:37:40`   15     Q. When was the last time you had your deposition

16    taken?

17     A. In the military, so it's been a while. More

18    than ten years ago.

19     Q. Okay. I'm just going to remind you of a few

`10:37:53`   20    basic things that are going to happen at the deposition

21    today. I'm going to ask you a series of questions and

22    if you don't understand any of my questions, just let me

23    know and I can rephrase or I can reask the question. Is

24    that fair?

## Page 5

1     A. Yes.

2     Q. And you understand that you're obligated to

3    tell the truth today and you're under oath?

4     A. Yes.

`10:38:15`   5     Q. For purposes of the court reporter, just make

6    sure that you don't talk over any of my questions and I

7    will of course try to do the same for you just so we can

8    get everything on the record. Do you understand?

9     A. Yes.

`10:38:30`   10     Q. And as you're answering yes now, just make

11    sure in the future that you don't say uh-huh or uh-uh or

12    shake your head. We need verbal answers on the record.

13    And so — We just need yes and no. Do you understand?

14     A. Okay.

`10:38:50`   15     Q. Okay. Mr. Martin, what is your current

16    position?

17     A. Police officer, City of Chicago.

18     Q. And are you — You're a patrol officer?

19     A. Yes.

`10:39:11`   20     Q. How long have you been a patrol officer for?

21     A. 11 years.

22     Q. What district are you based out of?

23     A. 21st District.

24     Q. Have you always been based out of the

Electronically signed by Michelle Scalise (101-420-547-2376)            e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 6

1    21st District?

2    A.  Yes.

3    Q.  How have you -- You mentioned earlier you were

4    in the military. When were you in the military?

10:39:38  5    A.  19- -- Was it -- 1990 to 1999, I believe.

6    Q.  So is that prior to --

7    A.  Coming to the police department.

8    Q.  -- coming to the police department?

9    A.  Yes.

10:39:55  10    Q.  Okay. What was the highest rank that you

11    achieved in the military?

12    A.  Petty Officer, second class.

13    Q.  What is your educational background?

14    A.  Criminal justice.

10:40:18  15    Q.  And where did you receive that certificate

16    from?

17    A.  College of Lake County.

18    Q.  Do you remember when you received that

19    certificate?

10:40:31  20    A.  19- -- Probably 2000. Somewhere around 2000.

21    Q.  That was prior to joining the force or was

22    that --

23    A.  Yes. Actually, I was still in the military,

24    so it had to be around '98 or '99. I'm sorry.

Page 7

1    Q.  Okay. The incident we're here to talk about

2    happened on October 18th, 2008. Do you recall the

3    incident that we're here to talk about today?

4    A.  I recall being in it, yes.

10:41:18  5    Q.  Yes.

6    And prior to October 18th, 2008, had you ever

7    seen the plaintiff in this case, Charles Boyle?

8    A.  No.

9    Q.  Just some background about your position as a

10:41:45  10    patrol officer.

11    What are your duties?

12    MS. GIBBONS: Objection. Vague.

13    BY MR. KSIAZEK:

14    Q.  You can answer.

10:41:52  15    A.  To patrol my beat, assist other officers,

16    crime prevention.

17    Q.  And what is your beat currently?

18    A.  Beat 2132.

19    Q.  Was that the same beat that you were on on

10:42:17  20    October 18th, 2008?

21    A.  That's the beat that I work, yes.

22    Q.  Okay. Do you work with a partner?

23    A.  Yes.

24    Q.  And were you working with a partner on

Page 8

1    October 18th, 2008?

2    A.  Yes.

3    Q.  Who was the partner that you were working

4    with?

10:42:36  5    A.  Vincent Darling.

6    Q.  How long have you worked with Officer Darling?

7    A.  Roughly, three or four years.

8    Q.  As of today's date?

9    A.  Yes, roughly three or four years.

10:42:53  10    Q.  And you were working with Mr. Darling -- You

11    were working with Mr. Darling on October 18th, 2008?

12    A.  Yes.

13    Q.  What are the current -- What are the hours

14    that you were working on October 18th, 2008?

10:43:19  15    A.  That would be midnight until 8:00 a.m.

16    Q.  Is that considered the first shift?

17    A.  Yes.

18    Q.  Do you recall what you were doing as you began

19    your first shift on October 18th, 2008?

10:43:46  20    A.  Regarding ...

21    Q.  Do you recall where you were located when you

22    first started your shift?

23    A.  On the beat.

24    Q.  And do you travel in a marked patrol car?

Page 9

1    A.  Yes.

2    Q.  And you were traveling in a marked patrol car

3    on October 18th, 2008?

4    A.  Correct.

10:44:12  5    Q.  Your patrol car has a radio in it, right?

6    A.  That's correct.

7    Q.  And on this radio you're able to pick up

8    transmissions from the Chicago Police Department, right?

9    A.  That's correct.

10:44:30  10    Q.  Now, are you able to pick up transmissions

11    from the University of Chicago Police Department?

12    A.  No.

13    Q.  Do you interact with the University of Chicago

14    Police Department often on your Beat 2132?

10:44:53  15    A.  Yes.

16    MS. GIBBONS: Objection. Vague as to interact.

17    BY MR. KSIAZEK:

18    Q.  How often would you say you talk to the

19    University of Chicago officers on a daily basis?

10:45:07  20    MS. HEGGIE: Objection. Vague.

21    BY THE WITNESS:

22    A.  Some days we do, some days we don't.

23    Q.  And when you -- On those days when you do

24    have -- when you have conversations with the University

3 (Pages 6 to 9)

Electronically signed by Michelle Scalise (101-420-547-2376)           e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

## Page 10

1  of Chicago Police Department, what would be a typical
2  situation where you would have such an occurrence?
3  　　MS. GIBBONS: Same objection. Calls for
4  speculation.
10:45:32  5  　　MS. HEGGIE: I join that objection.
6  BY THE WITNESS:
7  　　A. We would have a job assigned to us by the
8  dispatcher and sometimes the University of Chicago
9  police will show up and assist.
10:45:45  10  　　Q. Now, did you get -- have the occasion to have
11  a dispatch call directing you to 1435 East 53rd Street
12  on October 18th, 2008?
13  　　A. Yes.
14  　　Q. Do you remember when you received this
10:46:10  15  dispatch call?
16  　　A. No.
17  　　Q. Do you recall what the dispatch said?
18  　　A. Actually, there was a 10-1 at the University
19  of Chicago.
10:46:26  20  　　Q. And what does 10-1 represent?
21  　　A. Officer needs assistance.
22  　　Q. So the dispatch said 10-1 at 1435 East 53rd
23  Street?
24  　　MS. GIBBONS: Objection. Mischaracterizes his

## Page 11

1  previous testimony.
2  　　Go ahead.
3  BY THE WITNESS:
4  　　A. Yes.
10:46:51  5  　　Q. Did the dispatch say anything else?
6  　　A. That's pretty much it. That there was a 10-1,
7  officer needs assistance and they gave out the address.
8  　　Q. Prior to arriving at 1435 East 53rd Street,
9  was this all of the information that you had about the
10:47:21  10  situation there?
11  　　A. Yes.
12  　　Q. Do you recall what time you arrived at
13  1435 East 53rd Street?
14  　　A. I'm not sure of the exact time, but it was
10:47:36  15  somewhere in the early morning hour.
16  　　Q. Do you recall if it was after 1:00 in the
17  morning?
18  　　A. I'm not sure. I'm sure it was in the early
19  morning hour.
10:47:53  20  　　Q. Was it before 4:00 a.m.?
21  　　A. It could possibly have been.
22  　　Q. And where were you located when you got this
23  dispatch call?
24  　　A. Somewhere on the beat. I'm not exactly sure.

## Page 12

1  　　Q. Do you recall how long it took you to arrive
2  on the scene after receiving this dispatch call?
3  　　A. Maybe five minutes or less.
4  　　Q. So you were approximately five minutes away or
10:48:38  5  less from 1435 East 53rd Street when you received this
6  call?
7  　　A. Correct.
8  　　Q. Now, upon arriving at 1535 East 53rd Street,
9  what did you see when you first approached?
10:49:03  10  　　A. The supervisor was there, there were other
11  officers there, a CTD, and University of Chicago, and I
12  saw the defendant in handcuffs.
13  　　Q. The plaintiff you mean?
14  　　A. The plaintiff in handcuffs. I'm sorry.
10:49:23  15  　　Q. Okay. Let's go back just a second.
16  　　So you said you saw the supervisor?
17  　　A. That's correct.
18  　　Q. Do you know who the supervisor was?
19  　　A. Sergeant Witzack.
10:49:34  20  　　Q. How do you spell that?
21  　　A. I'm not sure.
22  　　MS. GIBBONS: I think it's W I T Z A C K.
23  BY THE WITNESS:
24  　　A. Something like that.

## Page 13

1  　　Q. So where was the supervisor located?
2  　　A. He was on the scene.
3  　　Q. Specifically, do you recall if he was standing
4  in the street, on the sidewalk?
10:50:00  5  　　A. In the street.
6  　　Q. Was he standing in front of a car or behind a
7  car or ...
8  　　A. I'm not exactly sure but I know he was in the
9  street.
10:50:11  10  　　Q. Okay. Was -- Was anyone around Sergeant
11  Witzack?
12  　　A. There were other officers about, but I'm not
13  sure exactly who was standing around him.
14  　　Q. Okay. How close were Sergeant Witzack and
10:50:31  15  these other officers in relation to each other?
16  　　A. Relatively close. I mean, there were a lot of
17  officers out there and I'm not exactly sure who were all
18  out there, but Officer Jones was there.
19  　　Q. Okay. That was going to be my next question.
10:50:48  20  You said there were other officers there.
21  Besides Officer Jones --
22  　　A. University of Chicago officers.
23  　　Q. So Officer Jones and Sergeant Witzack were the
24  only two other Chicago Police Officers there?

4  (Pages 10 to 13)

Electronically signed by Michelle Scalise (101-420-547-2376)　　　　　e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 14

1    A.  That I saw, yes.

2    Q.  That you saw.

3        And how many University of Chicago officers

4  did you see there?

10:51:14  5    A.  Not exactly sure, but five or six maybe.

6    Q.  Okay.  What — I think you indicated that the

7  sergeant and other officers were standing around.  Do

8  you recall anything else they were doing at that point?

9    A.  No.

10:51:41  10    Q.  Were all of them standing in the street?

11    A.  Yes.

12    Q.  So what else was in the street besides the

13  officers that you described?

14    A.  The vehicles and the plaintiff.

10:52:06  15    Q.  Do you recall how many vehicles were located

16  in the street?

17    A.  No.

18    Q.  When you say "vehicles," do you mean the --

19    A.  University of Chicago police officers.

10:52:24  20    Q.  Okay.  Did you see a tan vehicle also present

21  on the scene?

22    A.  I don't recall.

23    Q.  So what happened after you arrived and you

24  pulled up on the scene?

Page 15

1    A.  I spoke with the sergeant and said that -- I

2  guess the plaintiff was being arrested for battery to

3  University of Chicago police officers and that my Beat

4  2132 had to take him in and process him because the beat

10:53:13  5  that it was on, which was 2131 Beat, that particular

6  officer was a 1099.

7    Q.  What does 1099 mean?

8    A.  That officer was working by himself.

9    Q.  And it's procedure to take an arrestee back to

10:53:33  10  the station in a car with two officers?

11    A.  Two officers, yes.

12    Q.  Okay.  You said you saw the plaintiff,

13  Mr. Boyle, in handcuffs?

14    A.  Yes.

10:53:53  15    Q.  Do you recall where he was located when you

16  saw him?

17    A.  He was standing outside of the University of

18  Chicago police car.

19    Q.  Do you remember anything specific about the

10:54:13  20  University of Chicago police car when you were standing

21  outside?

22    A.  No.

23    Q.  Did you have any further conversations with

24  the sergeant beyond what you have just described to me?

Page 16

1    A.  No.

2    Q.  And did you have any conversations with any of

3  the officers at the scene besides the sergeant?

4    A.  No.

10:54:50  5    Q.  So what happened after you had this

6  conversation with the sergeant?

7    A.  The plaintiff was in hand restraints, he was

8  walked over to our vehicle, placed in the vehicle,

9  transported to the 21st District for processing.

10:55:28  10    Q.  When you first noticed the plaintiff, how did

11  he appear to you?

12    A.  He was a little -- I don't know.  He wasn't

13  irate but he looked a little, I guess, disheveled,

14  sweaty, a little annoyed.

10:56:07  15    Q.  Did you notice any marks or bruises upon him?

16    A.  No.

17    Q.  Did you notice anything about his clothing?

18    A.  No.  I don't recall.

19    Q.  By the way, what were -- were you wearing your

10:56:44  20  uniform on that day --

21    A.  Yes.

22    Q.  -- on October 18th, 2008?

23    A.  Yes.

24    Q.  And as you -- Was it one of the University of

Page 17

1  Chicago officers that handed the plaintiff over to you?

2    A.  No.

3    MS. GIBBONS:  Objection.  Mischaracterizes his

4  previous testimony.

10:57:09  5    MS. HEGGIE:  Join the objection.

6  BY MR. KSIAZEK:

7    Q.  Who handed the plaintiff to --

8    A.  No one actually --

9    MS. GIBBONS:  Same objection.

10:57:16  10    Go ahead.

11  BY THE WITNESS:

12    A.  No one handed the plaintiff over to us.  He

13  was walked over to our vehicle.

14    Q.  When you say walked over to your vehicle, what

10:57:25  15  do you mean?

16    A.  He was walked over to the vehicle.

17    Q.  Was he escorted?

18    A.  Basically, yes.

19    Q.  Was -- Did one of the officers grab him or

10:57:34  20  have his hands in any way?

21    A.  He was in hand restraints and he was walked

22  over to the vehicle.

23    Q.  How many officers walked him over to the

24  vehicle?

5 (Pages 14 to 17)

Electronically signed by Michelle Scalise (101-420-547-2376)        e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

## Page 18

1    A.   There was the University of Chicago officer
2    and myself and Officer Darling stood by as he was walked
3    over.
4    Q.   So one University of Chicago officer walked
10:58:00    5    him over?
6    A.   Right. And we were, like, standing right next
7    to him.
8    Q.   How far away was he, the plaintiff, before he
9    was walked over to your car?
10:58:13    10    A.   I don't know. Roughly, 2 or 3 feet, I guess,
11    or more. I'm not sure.
12    Q.   By the way, where did you park on 53rd Street
13    when you arrived on the scene?
14    A.   We parked in a westbound direction on 53rd on
10:58:40    15    the south side of the street.
16    Q.   Were you behind any other police vehicles or
17    cars?
18    A.   The only vehicle I saw was probably 2131.
19    Q.   Okay. And 21- -- Car 2131 was --
10:59:11    20    A.   A 1099 unit, yes.
21    Q.   Right. But car 2131 was -- was this vehicle
22    parked in front of you when you parked or where was this
23    vehicle parked?
24    A.   Right -- It was in front.

## Page 19

1    Q.   Did you have any conversations with Mr. Boyle
2    as he was being walked over to your vehicle?
3    A.   No.
4    Q.   And you -- He was placed inside your vehicle?
10:59:54    5    A.   Yes.
6    Q.   In the backseat?
7    A.   Yes.
8    Q.   Now, after he was placed in the backseat of
9    the car, what did you do?
11:00:07    10    A.   Transported him to the station.
11    Q.   And how long of a drive is it to the 21st
12    station from where you were at that point?
13    A.   Maybe five or ten minutes.
14    Q.   During these -- this five- to ten-minute drive
11:00:30    15    to the station, did you have any conversations with
16    Mr. Boyle?
17    A.   No.
18    Q.   Did Mr. Boyle say anything to you?
19    A.   In the station.
11:00:39    20    Q.   Did he say anything to you during the car
21    ride?
22    A.   No.
23    Q.   Did he say anything to your partner during the
24    car ride?

## Page 20

1    A.   No.
2    Q.   Did you have any conversations with your
3    partner during the car ride?
4    A.   No.
11:00:52    5    Q.   So what was your understanding of why you were
6    taking Mr. Boyle back to the station at that point?
7    MS. GIBBONS: Objection. Vague.
8    Go ahead.
9    BY THE WITNESS:
11:01:13    10    A.   My understanding is that he had battered a
11    University of Chicago police officer and that upon
12    signing a complaint he was taken into custody.
13    Q.   And this was your belief after you placed him
14    in your vehicle?
11:01:30    15    MS. GIBBONS: Objection. Vague, Mischaracterizes
16    his previous testimony.
17    Go ahead.
18    BY THE WITNESS:
19    A.   That was my belief before he was placed into
11:01:39    20    the vehicle.
21    Q.   When did you come to that belief?
22    MS. GIBBONS: Same objection.
23    BY THE WITNESS:
24    A.   When we arrived on the scene and the sergeant

## Page 21

1    advised us of what had occurred.
2    Q.   Do you recall -- You said you took him back to
3    the station, right?
4    A.   Correct.
11:02:04    5    Q.   Do you know what time you arrived back at the
6    station?
7    A.   I'm not exactly sure, no.
8    Q.   Okay. When you got at the station with
9    Mr. Boyle, what did you do at that point?
11:02:27    10    A.   He was logged in.
11    Q.   What do you mean by "logged in"?
12    A.   You have to log prisoners in. He was taken
13    back to the interview room, and from there he was
14    processed for the arrest.
11:02:51    15    Q.   And why was he taken to the interview room?
16    A.   That's where arrestees are taken.
17    Q.   Did anyone -- any of the other officers at the
18    scene come back to the station with you, either Chicago
19    police officers or University of Chicago police
11:03:11    20    officers?
21    A.   University of Chicago.
22    Q.   Do you recall the names of the officers who
23    came back to the station?
24    A.   I believe there was Officer Moore -- Can I see

6 (Pages 18 to 21)

Electronically signed by Michelle Scalise (101-420-547-2376)

e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

## Page 22

1 that?

2 Q. When I -- I'll show it to you in a little bit.

3 MS. GIBBONS: Just from your memory.

4 BY THE WITNESS:

11:03:32 5 A. I believe there was Officer Moore, Officer

6 Torres, and Officer Galarza.

7 Q. Okay. When you said you processed the arrest,

8 what do you mean by that?

9 A. Complaints were signed. Upon complaints being

11:04:02 10 signed, we do the name check, background, and the arrest

11 report.

12 Q. Okay. Do you know if you filled out the

13 arrest report or if your partner filled out the arrest

14 report?

11:04:24 15 A. I believe my partner made the arrest report.

16 Q. Did you fill out any paperwork for Mr. Boyle?

17 A. Complaints.

18 Q. The complaints?

19 A. Yes.

11:04:37 20 Q. Did you fill out any further paperwork besides

21 the complaints?

22 A. Not that I recall.

23 Q. You said earlier that the plaintiff had a

24 conversation with you when you arrived at the station,

## Page 23

1 correct?

2 A. Inside the interview room, correct.

3 Q. Do you recall what time this conversation took

4 place?

11:05:13 5 A. I'm not sure, no.

6 Q. Okay. What did he say to you in the interview

7 room?

8 A. Something to the effect that -- that he had no

9 problem with the way we handled things, that he was

11:05:29 10 being arrested, but that he felt that -- I guess, the

11 university guys didn't handle him properly and that he

12 was going to sue the University of Chicago; that my

13 partner and I need not worry about anything because we

14 hadn't done anything to him.

11:05:58 15 Q. Was anyone else present for this conversation?

16 A. Officer Darling.

17 Q. Was anyone else present?

18 A. I don't recall.

19 Q. Did you say anything in response or did you or

11:06:28 20 your partner say anything in response to these

21 statements?

22 A. No.

23 Q. Did you know what he was talking about when he

24 said he felt that the University of Chicago guys didn't

## Page 24

1 handle it properly?

2 MS. GIBBONS: Objection. Foundation. Calls for

3 speculation.

4 BY THE WITNESS:

11:06:58 5 A. No.

6 MS. HEGGIE: Join the objection.

7 BY MR. KSIAZEK:

8 Q. What did you do after you had this

9 conversation with Mr. Boyle?

11:07:09 10 A. Continued on with the processing of the

11 arrest.

12 Q. Now, at that point when you're inside the

13 station, did you have any conversations with the

14 University of Chicago officers that you indicated were

11:07:28 15 present, I believe, Moore, Galarza, and Torres?

16 A. No.

17 Q. At any point on that date, October 18th, 2008,

18 did you have any conversations with any of the

19 University of Chicago officers?

11:07:57 20 A. I'm not understanding what you said.

21 Q. Sure.

22 You said you didn't have any conversations

23 with the University of Chicago officers at the scene,

24 right?

## Page 25

1 A. Correct.

2 Q. On the scene on 53rd Street?

3 A. Correct.

4 Q. And you said you didn't have any conversations

11:08:15 5 with the University of Chicago officers while you're at

6 the station?

7 A. Correct.

8 Q. Now, at any point during that day after you

9 were inside the station, did you have any conversations

11:08:33 10 with any other Chicago officers?

11 A. As in -- About the incident or ...

12 Q. I'm just asking generally.

13 A. There was a phone call made --

14 Q. Okay.

11:08:42 15 A. -- to the station.

16 Q. And who made this phone call, if you remember?

17 A. There was a gentleman who said that he was the

18 uncle.

19 Q. Do you recall his name?

11:08:52 20 A. He -- I'm not sure of his name, but the desk

21 called me to the front desk that there was a gentleman

22 on the phone who identified himself as, I guess, a

23 Deputy Chief of Police or something for -- I think it

24 was Maywood Park or Oak Park police and he identified

7 (Pages 22 to 25)

Electronically signed by Michelle Scalise (101-420-547-2376)

e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 26

1    himself as the uncle of the plaintiff and he wanted to
2    know what had happened, and I explained to him that I
3    was only the arresting officer, that the
4    University -- this was a University of Chicago arrest
5    and that he would have to speak to the University of
6    Chicago police officers.
7        Q.  Okay.  At that point --
8        A.  And it was -- I'm sorry.
9        Q.  Sure.  Go ahead.
10       A.  And it was -- At that point, I went to the
11   interview one and I asked one of the officers if they
12   wanted to speak to the gentleman on the phone and they
13   said no.  I went back to the phone, explained to him
14   what the situation was and he thanked me and that he
15   just wanted to know if his nephew was okay.
16       Q.  When you say you explained the situation, can
17   you elaborate on that?
18       A.  I explained to him that it was a -- that the
19   plaintiff was arrested for battery to a police officer,
20   University of Chicago, that this was indeed a University
21   of Chicago arrest, but that we had to process the
22   arrest.
23       Q.  Now, is it your understanding that when the
24   University of Chicago Police Department decides to

11:09:35 — line 5
11:09:51 — line 10
11:10:09 — line 15
11:10:32 — line 20

Page 27

1    arrest any person, are you, the Chicago Police
2    Department, charged with processing those arrests made
3    by the University of Chicago?
4        MS. GIBBONS:  Objection.  Vague.  Calls for
5    speculation.
6    BY THE WITNESS:
7        A.  Yes.
8        Q.  So is it your understanding that the
9    University of Chicago does not have any -- the
10   University of Chicago Police Department does not arrest
11   individuals themselves?
12       MS. GIBBONS:  Same objection.
13       MS. HEGGIE:  I'll join in the objection.
14   BY THE WITNESS:
15       A.  When there's probable cause for an arrest to
16   be made, the University of Chicago detains and the City
17   of Chicago actually processes the arrest.
18       Q.  So it's your understanding that the University
19   of Chicago does not process any arrest?
20       A.  As far as I know.
21       Q.  Okay.  Besides this conversation with what you
22   said was the Deputy Chief of Police of either Maywood or
23   Oak Park?
24       A.  That's what he identified himself as.

11:11:10 — line 5
11:11:17 — line 10
11:11:28 — line 15
11:11:50 — line 20

Page 28

1        Q.  -- did you have any other conversations with
2    any officers from the University of Chicago officers on
3    that date either inside the station or outside the
4    station?
5        A.  After the gentleman identified who he was, I
6    went back to the interview room and said there's a
7    gentleman on the phone who said he's the uncle of this
8    kid and would like to speak to one of you.
9        Q.  Sure.
10       A.  And at that time, they declined, I went back
11   to the phone and, as I stated, explain to him the
12   situation, he thanked me and stated that he wanted to
13   know that his nephew was okay, and that was it.
14       Q.  In regards -- Do you know when the University
15   of Chicago officers, Officers Moore, Torres, and
16   Galarza, I believe, do you know when they arrived at the
17   station?
18       A.  Right around the same time that we got there.
19       Q.  So it was about the same time when you
20   arrived?
21       A.  Roughly around the same time, yes.
22       Q.  Do you know when they left the station?
23       A.  No.
24       Q.  Okay.  What were the University of Chicago

11:12:18 — line 5
11:12:30 — line 10
11:13:00 — line 15
11:13:17 — line 20

Page 29

1    officers doing once -- What did they do once they
2    arrived at the station?
3        MS. GIBBONS:  Objection.  Calls for speculation.
4        You can answer.
5    BY MR. KSIAZEK:
6        Q.  If you know.
7        A.  I guess they have their own individual reports
8    that they have to fill out.
9        Q.  So -- If you know, you believe that -- If you
10   know, do you think that they were filling out their
11   reports?
12       MS. GIBBONS:  Objection.  Calls for speculation.
13       MS. HEGGIE:  Objection.  Foundation.
14   BY THE WITNESS:
15       A.  I don't know.
16       Q.  Okay.  Where were the University of Chicago
17   officers, if you know, when you went into the interview
18   room and had that conversation with the plaintiff that
19   we spoke about?
20       MS. GIBBONS:  Same objection.
21   BY THE WITNESS:
22       A.  I don't know.
23       Q.  At any -- Did you ever see the -- Let me back
24   up.  At any point, did the University of Chicago

11:13:37 — line 5
11:13:47 — line 10
11:13:56 — line 15
11:14:21 — line 20

Electronically signed by Michelle Scalise (101-420-547-2376)                    e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

## Page 30

1 officers enter into the interview room while you were in
2 there?
3    A. No.
4    Q. At any point after you left the interview
11:14:54 5 room, did you see the University of Chicago officers
6 enter the interview room?
7    A. No.
8    Q. At any point, did you see the University of
9 Chicago officers have a conversation with the plaintiff?
11:15:11 10    A. No.
11    Q. Did you overhear any conversation that may or
12 may not have occurred between the University of Chicago
13 officers and the plaintiff?
14    A. No.
11:15:22 15    Q. Did you overhear any conversations that the
16 University of Chicago officers were having among
17 themselves?
18    A. No.
19    Q. Do you recall anything that the University of
11:15:52 20 Chicago officers said once they arrived at the station?
21    A. No.
22    Q. When you placed Mr. Boyle -- After you left
23 Mr. Boyle in the interview room, where did you go?
24    A. To the front desk.

## Page 31

1    Q. How far away is the front desk from the
2 interview room?
3    A. Approximately, 2 feet maybe.
4    Q. And was that the front desk that you filled
11:16:35 5 out the complaint, as you said?
6    A. No. I filled out the complaint in the
7 interview room.
8    Q. Okay. I'm going to --
9    MR. KSIAZEK: Will you mark this?
11:16:41 10    (Martin Deposition Exhibit No. 1
11    marked as requested.)
12 BY MR. KSIAZEK:
13    Q. I'm handing you what has been marked for
14 identification purposes as Exhibit 1. This is a police
11:17:41 15 report; is that right?
16    (Witness viewing document.)
17 BY THE WITNESS:
18    A. Correct.
19    Q. And under Box 1 on the top under offense,
11:17:51 20 slash, incident, it states interference with public
21 officer. Is that what it states?
22    A. Yes.
23    MS. GIBBONS: Jonathan, just to be clear for the
24 record, it's a general offense case report. I know it's

## Page 32

1 kind of cut off, but I just want to put that on there.
2    MR. KSIAZEK: Okay. I wasn't sure about that.
3    Thank you.
4 BY MR. KSIAZEK:
11:18:11 5    Q. Do you know who filled out this general
6 offense case report?
7    A. My partner, Vincent Darling.
8    Q. And this is your signature on the bottom of
9 the page in Box 96 where it says reporting Officer
11:18:40 10 C. Martin?
11    A. Correct.
12    Q. Did you review this document prior to the
13 deposition testimony today?
14    A. Yes.
11:18:49 15    Q. Okay. And, if you would, could you read
16 silently to yourself the narrative that is provided in
17 the bottom middle of the page, and then I'll ask you if
18 that -- if that is correct.
19    (Witness viewing document.)
11:19:06 20 BY MR. KSIAZEK:
21    Q. Is -- That information that is contained
22 there, is that correct information?
23    A. Yes.
24    Q. So when it states that by flailing his arms

## Page 33

1 and pulling away during a protective pat-down, do you
2 have any knowledge of the plaintiff flailing his arms
3 and pulling away during a protective pat-down?
4    A. No.
11:20:04 5    MS. GIBBONS: Objection. Foundation.
6    Go ahead.
7 BY THE WITNESS:
8    A. No.
9    Q. Did you -- When it says offender read rights,
11:20:17 10 did you read the plaintiff his right?
11    A. Yes, he was read his rights.
12    Q. Was it by yourself?
13    A. Officer Darling.
14    Q. Officer Darling.
11:20:28 15    Okay. And when it states 80's had no
16 knowledge of events, that 80 indicates arresting
17 officers, correct?
18    A. Yes.
19    Q. And that statement is true, right?
11:20:50 20    A. That's correct.
21    Q. Now, under 41, the offender's name, can you
22 read the height and weight for me?
23    A. Charles Boyle; 5, 9, 197.
24

9 (Pages 30 to 33)

Electronically signed by Michelle Scalise (101-420-547-2376)    e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 34

```
              1        (Martin Deposition Exhibit No. 2
              2          marked as requested.)
              3   BY MR. KSIAZEK:
              4        Q.  I've handed you what's been marked as
11:22:11      5   Exhibit 2.  Do you recognize this document?
              6        (Witness viewing document.)
              7   BY THE WITNESS:
              8        A.  Yes.
              9        Q.  And this is —
11:22:16     10        MS. GIBBONS:  Not to interrupt, but this is a
             11   multi-page document.
             12        MR. KSIAZEK:  I'm sorry.  Group exhibit.
             13        MS. GIBBONS:  It includes numerous different
             14   reports that aren't — this is basically the City of
11:22:28     15   Chicago's — part of their 26-A disclosure.  So I just
             16   want to be clear, you're directing him to look at the
             17   first part?
             18        MR. KSIAZEK:  Sure.  Actually — Yeah.
             19        MS. GIBBONS:  Which is a criminal history report
11:22:42     20   which is a two-page Bates-stamped 1 and 2.
             21   BY MR. KSIAZEK:
             22        Q.  The first two pages of this document indicate
             23   Mr. Boyle's criminal history report, correct?
             24        A.  Yes.
```

Page 35

```
              1        Q.  And did you search Mr. Boyle's history
              2   report -- criminal history report?
              3        MS. GIBBONS:  Objection.  Vague.
              4        Go ahead.
11:23:21      5   BY THE WITNESS:
              6        A.  Yes.
              7        Q.  When did you search Mr. Boyle's criminal
              8   history?
              9        A.  On the date of the incident.
11:23:26     10        Q.  Do you recall if you searched his criminal
             11   history at the station or —
             12        A.  Yes.
             13        Q.  -- was it at the scene?
             14        Okay.  Did you search his history before or
11:23:38     15   after filing — or preparing the reports?
             16        A.  During.
             17        Q.  During?
             18        A.  Yes.
             19        Q.  Okay.  If you flip to page 3 of this document,
11:24:06     20   what has been Bates-stamped 0003, this is a clear data
             21   warehouse information sheet, is that correct, that's
             22   what this document states?
             23        A.  Yes.
             24        Q.  Now, there's pictures of Mr. Boyle on this
```

Page 36

```
              1   clear data warehouse sheet, correct?
              2        A.  Yes, that's correct.
              3        Q.  Is this how -- Do these pictures fairly and
              4   accurately reflect how Mr. Boyle appeared on
11:24:45      5   October 18th, 2008?
              6        MS. GIBBONS:  Objecting for the record that this is
              7   a very dark photograph of the picture of the clear data
              8   warehouse, so to the best of your knowledge.
              9   BY THE WITNESS:
11:24:57     10        A.  I — I'm not sure.  I can't actually see this.
             11        Q.  Okay.  Let's look at the top left photograph.
             12   There are four photographs on this page that are
             13   apparently printed out.  Looking at the top left
             14   photograph, and I know it's dark, does it appear in this
11:25:21     15   photograph that the plaintiff's T-shirt or polo shirt is
             16   ripped to your — from what you see?
             17        MS. GIBBONS:  Same objection.
             18   BY THE WITNESS:
             19        A.  I really can't tell.
11:25:37     20        Q.  Okay.  And just on the bottom -- on the bottom
             21   two photographs, those are photographs of Mr. Boyle's
             22   shoulders and arms, correct?
             23        A.  I believe so, yes.
             24        Q.  Okay.  Let's turn to, I believe this is
```

Page 37

```
              1   page 8, what has been marked as Bates-stamped 0008.
              2   This is the original case incident report; is that
              3   correct?
              4        A.  Yes.
11:26:28      5        Q.  Okay.  And if we — Under occurrence date, it
              6   states October 18th, 2008 and it says 237.  Does
              7   that -- Is that approximately when this incident
              8   occurred?
              9        A.  Where is that located?
11:27:06     10        Q.  In the top portion under the incident box.
             11        A.  Occurrence date?
             12        Q.  Where it says occurrence date, right.
             13        A.  Yes.
             14        Q.  So that 237 would be about when this incident
11:27:18     15   occurred?
             16        A.  237 probably is when, I guess, it was
             17   dispatched to us.  Same whereabouts that time.
             18        Q.  Okay.  And it states the victims — it says
             19   Clarence Moore and Larry Torres, right?
11:27:36     20        A.  Correct.
             21        Q.  If you turn to the next page, which is
             22   Bates-stamped 0009, this has your name as a reporting
             23   officer, right?
             24        A.  Yes.
```

10 (Pages 34 to 37)

Electronically signed by Michelle Scalise (101-420-547-2376)          e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 38

1    Q. Okay. And on the next page, 0010, this is a
2 narrative. I just ask that you read through this
3 narrative very quickly. Once you're finished, just let
4 me know whether or not this is a correct statement of
11:28:25  5 events.
6        (Witness viewing document.)
7 BY THE WITNESS:
8    A. Okay. Yes.
9    Q. Okay. And did Officer Darling prepare this
11:28:34  10 arrest --
11    A. Yes.
12    Q. -- report?
13    Okay. Okay. It appears documents 11 --
14 documents Bates-stamped 0011, 0012 are sort of a similar
11:28:55  15 version of this arrest report. Did you photograph --
16 I'm sorry -- fingerprint the plaintiff?
17    A. No.
18    Q. And you didn't take any photographs --
19    A. No.
11:29:20  20    Q. -- of the plaintiff?
21    That would be the lockup keeper's job?
22    A. Yes.
23    Q. What did you do after filling out the arrest
24 report and complaint?

Page 39

1 MS. GIBBONS: Objection to the extent that couples
2 the documents that you signed off on.
3 BY MR. KSIAZEK:
4    Q. What did you do?
11:29:54  5    A. I got this processed, searched, called for a
6 transport.
7    Q. And do you recall what time a transport
8 arrived?
9    A. No.
11:30:21  10    Q. Going back to the scene itself, do you recall
11 any other people who were present on the scene besides
12 officers? Do you recall seeing anyone?
13    A. There was a young man and a young lady.
14    Q. Anyone else besides this young man and young
11:31:08  15 lady?
16    A. No, not that I recall.
17    Q. Can you describe these two persons as you saw
18 them?
19    A. No.
11:31:15  20    Q. Do you know if they were white or
21 African-American?
22    A. African-American.
23    Q. Were they taller or shorter than you?
24    A. I can't recall. I'm sure the female was.

Page 40

1    Q. Have you ever been sued before?
2    A. No.
3    Q. Did you see the University of Chicago
4 defendants -- University of Chicago officers strike
11:32:23  5 Mr. Boyle at any point on 53rd Street on October 18th,
6 2008?
7    A. No.
8    Q. Did you see the University of Chicago officers
9 strike Mr. Boyle at any point inside the station on
11:32:39  10 October 18th, 2008?
11    A. No.
12    Q. Did you have any conversations besides those
13 we've already spoken about in regards to the University
14 of Chicago officers striking Mr. Boyle?
11:32:57  15 MS. GIBBONS: Objection vague.
16    Go ahead.
17 BY THE WITNESS:
18    A. No.
19    Q. So you didn't have any conversations with any
11:33:04  20 other officers in regards to what happened at the scene
21 on October -- what happened on 53rd Street?
22 MS. GIBBONS: Objection, asked and answered.
23 BY THE WITNESS:
24    A. The only conversations that I had with any

Page 41

1 officer was with my partner, Officer Darling.
2    Q. What conversation did you have with Officer
3 Darling?
4    A. As far as what allegedly had happened?
11:33:25  5    Q. Okay. When did this conversation take place?
6    A. Probably during the processing.
7    Q. And besides yourself and Mr. Darling, was
8 anyone else present?
9    A. No.
11:33:39  10    Q. And what -- What did you say?
11    A. I asked him -- Basically, we were talking
12 about the complaints and what the complaints -- what the
13 complaint should state and the arrest report.
14    Q. Okay. How did he respond?
11:34:00  15    A. Explained what happened. That was explained
16 to him by the University of Chicago police what
17 happened.
18    Q. Okay. What did Officer Darling tell you that
19 the University of Chicago police officers explained to
11:34:19  20 him?
21    A. Everything that's indicated on the general
22 offense case report.
23    Q. When you say "everything," just --
24    A. The flailing of the arms and he pulled away

11 (Pages 38 to 41)

Electronically signed by Michelle Scalise (101-420-547-2376)    e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 42

1 and they were trying to pat him down and — basically
2 that's it. What's here in the case report.
3    Q. Did he say who he talked to specifically?
4    A. No.
11:34:53 5    Q. He just said he talked to University of
6 Chicago officers?
7    A. Yes.
8    Q. Did he say when he had these conversations?
9    A. No.
11:35:02 10    Q. Did he say anything else about the flailing of
11 the arms about — what the University of Chicago officer
12 said to him about the flailing of the arms?
13    A. No.
14    Q. So basically everything he told you was — I
11:35:31 15 just want to clarify — everything he told you was what
16 is stated on the arrest report?
17    A. Yes. What the university explained to him
18 that happened.
19    Q. Do you know what you ended up charging
11:35:56 20 Mr. Boyle with?
21    A. I believe it was resisting a police officer.
22    Q. Why did you charge Mr. Boyle with resisting a
23 police officer?
24    A. Well, there was a sign of complaint, the

Page 43

1 complainant stating that he had battered a police
2 officer and that was the charge.
3    Q. When did — Who was the complainant?
4    A. Officers Moore and Torres.
11:36:30 5    Q. When did they state that the — they were
6 battered to you or when did they say that?
7    A. I don't recall. When they stated it to him,
8 to Officer Darling?
9    Q. To anyone?
11:36:43 10    A. I'm not sure.
11    Q. So you're saying that Officers Moore and
12 Torres told Officer Darling that they were battered?
13    MS. HEGGIE: Objection. Foundation.
14    MS. GIBBONS: Same objection.
11:36:56 15 BY THE WITNESS:
16    A. I'm saying that we arrived on the scene, the
17 situation was explained to us by the sergeant and at one
18 point, I guess, Officer Darling was told what happened
19 by Officer Torres or Officer Moore. I'm not exactly
11:37:18 20 sure who explained to him exactly what happened.
21    Q. Do you know when — and I think I may have
22 asked this — but do you know when Officers Moore or
23 Torres told Officer Darling what happened?
24    MS. HEGGIE: Objection, foundation.

Page 44

1    MS. GIBBONS: Same objection.
2 BY THE WITNESS:
3    A. No.
4    Q. Okay. Did — But Officer Torres and Moore
11:37:47 5 never told you specifically that they were battered,
6 right?
7    A. No.
8    Q. And you filled out the complaint?
9    A. Yes.
11:37:54 10    Q. Why didn't you talk to Officers Moore or
11 Torres about this incident?
12    A. I guess I didn't want to talk to them. I
13 don't know.
14    Q. Why didn't you want to talk to them?
11:38:22 15    A. There were complaints signed, there was an
16 arrest made.
17    Q. So you didn't — You didn't follow up with
18 Officer Moore and Torres about — about what exactly
19 happened?
11:38:38 20    MS. GIBBONS: Objection. Vague, argumentative.
21 BY THE WITNESS:
22    A. No.
23    Q. And at any point after you filled out the
24 complaint, did you talk to Officers Moore and Torres

Page 45

1 about whether or not they were battered on October 18th,
2 2008?
3    MS. GIBBONS: Objection, asked and answered.
4    Go ahead.
11:39:05 5 BY THE WITNESS:
6    A. No.
7    Q. Have you seen the plaintiff since
8 October 18th, 2008?
9    A. No.
11:39:23 10    Q. Just one moment. I might have a few more
11 questions, sir, and then we should be all done.
12    Have you testified in court for any reason in
13 relation to this case; the charge — the complaint that
14 you filed?
11:41:07 15    A. No.
16    Q. And had you had conversations with anyone
17 since the date of filing the complaint about this
18 incident?
19    MS. GIBBONS: Objection to the extent it calls for
11:41:34 20 information for attorney-client privilege.
21 BY MR. KSIAZEK:
22    Q. I'm sorry. Not including your attorney.
23    A. No.
24    Q. So — So you haven't spoke to Officer Darling

12 (Pages 42 to 45)

Electronically signed by Michelle Scalise (101-420-547-2376)         e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 46

1 about the incident since October 18th, 2008?

2 MS. GIBBONS: Same objection.

3 BY MR. KSIAZEK:

4 Q. Okay. Outside the presence of your attorney?

11:41:52 5 A. No.

6 Q. Have you spoken to any – any of the

7 University of Chicago officers since the date of the

8 filing of the complaint?

9 A. No.

11:42:11 10 Q. Have you seen any – Officer Torres or Officer

11 Moore or Officer Galarza since that date?

12 A. That was my first time seeing Officer Moore.

13 I don't think he works third watch, so I haven't seen

14 him since, and I haven't seen Officer Torres either.

11:42:30 15 Q. Have you seen Officer Galarza?

16 A. Yes.

17 Q. When did you see Officer Galarza?

18 A. Somewhere on the street.

19 Q. Do you recall when this took place?

11:42:43 20 A. No.

21 Q. It was just on your normal duty?

22 A. Yes.

23 Q. Okay.

24 MR. KSIAZEK: I don't have any further questions.

Page 47

CROSS-EXAMINATION

2 BY MS. HEGGIE:

3 Q. I just have a few for you, Officer Martin.

4 I'm one of the attorneys representing the University of

11:43:23 5 Chicago and the University of Chicago police officers.

6 Did you complete high school?

7 A. Yes.

8 Q. Where did you attend high school?

9 A. Wendell Phillips High School.

11:43:31 10 Q. Is that here in Chicago?

11 A. Yes.

12 Q. What is your date of birth?

13 MS. GIBBONS: Objection. You can ask him how old

14 he is. We would just object to that as a security

11:43:41 15 issue.

16 MS. HEGGIE: Okay. I'll withdraw my question.

17 BY MS. HEGGIE:

18 Q. When you arrived at the scene on October 18th,

19 did you see any of the University of Chicago police

11:43:51 20 officers using excessive force towards Mr. Boyle, the

21 plaintiff?

22 A. No.

23 Q. Did you see, when you arrived at the scene on

24 October 18th, any of the University of Chicago police

Page 48

1 officers being harmful in any way towards the plaintiff,

2 Mr. Boyle?

3 A. No.

4 Q. You testified that you witnessed Mr. Boyle

11:44:14 5 being walked 2 or 3 feet to your squad car by the

6 University of Chicago police officers on the 18th; is

7 that right?

8 A. Yes.

9 Q. When the University of Chicago police officers

11:44:27 10 were walking Mr. Boyle to your squad car, did you see

11 him using excessive force towards Mr. Boyle?

12 A. No.

13 Q. As they were walking Mr. Boyle to your squad

14 car, did you see them acting in any way harmful or

11:44:37 15 hurting Mr. Boyle?

16 A. No.

17 Q. Okay. And do you know if the University of

18 Chicago Police Department has a lockup facility, if you

19 know?

11:44:49 20 A. I'm not sure.

21 Q. All right. Anyone that the University of

22 Chicago Police Department detains would be brought to

23 the City of Chicago Police Department for processing an

24 arrest, correct?

Page 49

1 A. Yes.

2 Q. And the City of Chicago prepares police

3 reports and documents associated with the arrest?

4 A. Correct.

11:45:10 5 Q. And do you know if the University of Chicago

6 Police Department paperwork regarding anyone they detain

7 is presented to a court on an arrest the City of Chicago

8 makes?

9 A. I'm not sure.

11:45:24 10 Q. And prior to working with the City of Chicago

11 Police Department, did you work with any other police

12 departments?

13 A. I was military police.

14 MS. HEGGIE: I have no further questions.

11:45:38 15 Thank you.

16 MS. GIBBONS: I have no questions.

17 MR. KSIAZEK: We're all done then.

18 MS. GIBBONS: We'll reserve.

19 (Witness excused.)

20

21

22

23

24

13 (Pages 46 to 49)

Electronically signed by Michelle Scalise (101-420-547-2376)

e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

Page 50

```
 1    STATE OF ILLINOIS  )
                         ) SS.
 2    COUNTY OF COOK     )
 3
 4         IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                COUNTY DEPARTMENT, LAW DIVISION
 5
 6    CHARLES BOYLE,          )
              Plaintiff,      )
 7         vs.               )
      UNIVERSITY OF CHICAGO  ) No. 09 C 1080
 8    POLICE OFFICER LARRY    )
      TORRES, STAR #1028,     )
 9    UNIVERSITY OF CHICAGO   )
      POLICE OFFICER CLARENCE E. )
10    MOORE, STAR #1912,      )
      UNIVERSITY OF CHICAGO   )
11    POLICE OFFICER GALARZA, )
      UNIVERSITY OF CHICAGO   )
12    POLICE OFFICER KWIATKOWSKI, )
      UNIVERSITY OF CHICAGO   )
13    POLICE OFFICER GILLESPIE, )
      UNIVERSITY OF CHICAGO,  )
14    CHICAGO POLICE OFFICER V. )
      DARLING, STAR #19135,   )
15    CHICAGO POLICE OFFICER C.E. )
      MARTIN, STAR #17246, AND )
16    THE CITY OF CHICAGO,    )
              Defendants.     )
17
           I, OFFICER CARL MARTIN, state that I have read
18    the foregoing transcript of the testimony given by me at
      my deposition on the 28th day of October, A.D., 2009,
19    and that said transcript constitutes a true and correct
      record of the testimony given by me at the said
20    deposition except as I have so indicated on the errata
      sheets provided herein.
21
                    _____
22                  OFFICER CARL MARTIN
      SUBSCRIBED AND SWORN to
23    before me this _____ day
      of _____, 2007.
24    _____
      NOTARY PUBLIC
```

Page 51

```
 1    UNITED STATES OF AMERICA   )
      NORTHERN DISTRICT OF ILLINOIS )
 2    EASTERN DIVISION           ) SS.
      STATE OF ILLINOIS          )
 3    COUNTY OF COOK             )
 4         I, Michelle M. Scalise, Certified Shorthand
 5    Reporter, do hereby certify that OFFICER CARL MARTIN,
 6    was first duly sworn by me to testify to the whole truth
 7    and that the above deposition was reported
 8    stenographically by me and reduced to typewriting under
 9    my personal direction.
10         I further certify that the said deposition was
11    taken at the time and place specified and that the
12    taking of said deposition commenced on the 28th day of
13    October, A.D., 2009, at 10:37 a.m.
14         I further certify that I am not a relative or
15    employee or attorney or counsel of any of the parties,
16    nor a relative or employee of such attorney or counsel,
17    nor financially interested directly or indirectly in
18    this action.
19
20
21
22
23
24
```

Page 52

```
 1         In witness whereof, I have hereunto set my
 2    hand at Chicago, Illinois, this 15th day of March, A.D.,
 3    2010.
 4
 5
 6         _____Michelle M. Scalise_____
           MICHELLE M. SCALISE, CSR
 7         205 West Randolph Street
           5th Floor
 8         Chicago, Illinois 60606
           Phone: (312) 236-6936
 9
10    CSR No. 084-004616
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

14  (Pages 50 to 52)

Electronically signed by Michelle Scalise (101-420-547-2376)

e7a4e24a-a1b2-4fb5-9256-88f673fbdb81

**INDEX**

**A**

able 9:7,10
accurately 36:4
achieved 6:11
acting 48:14
action 51:18
Adams 1:22 2:3
address 11:7
advised 21:1
African-American 39:21,22
ago 4:18
ahead 11:2 17:10
  20:8,17 26:9 33:6
  35:4 40:16 45:4
allegedly 41:4
AMERICA 51:1
annoyed 16:14
answer 7:14 29:4
answered 40:22
  45:3
answering 5:10
answers 5:12
apparently 36:13
appear 16:11 36:14
APPEARANCES
  2:1
appeared 36:4
appears 38:13
approached 12:9
approximately
  12:4 31:3 37:7
argumentative
  44:20
arms 32:24 33:2
  36:22 41:24 42:11
  42:12
arrest 21:14 22:7
  22:10,13,13,15
  24:11 26:4,21,22
  27:1,10,15,17,19
  38:10,15,23 41:13
  42:16 44:16 48:24
  49:3,7
arrested 15:2 23:10
  26:19
arrestee 15:9

arrestees 21:16
arresting 26:3
  33:16
arrests 27:2
arrive 12:1
arrived 11:12
  14:23 18:13 20:24
  21:5 22:24 28:16
  28:20 29:2 30:20
  39:8 43:16 47:18
  47:23
arriving 11:8 12:8
asked 26:11 40:22
  41:11 43:22 45:3
asking 25:12
assigned 10:7
assist 7:15 10:9
assistance 10:21
  11:7
associated 49:3
ASSOCIATES 2:2
attend 47:8
attorney 45:22 46:4
  51:15,16
attorneys 47:4
attorney-client
  45:20
A.D 1:24 50:18
  51:13 52:2
a.m 1:23 8:15 11:20
  51:13

**B**

B 3:8
back 12:15 15:9
  20:6 21:2,5,13,18
  21:23 26:13 28:6
  28:10 29:23 39:10
background 6:13
  7:9 22:10
backseat 19:6,8
based 5:22,24
basic 4:20
basically 17:18
  34:14 41:11 42:1
  42:14
basis 9:19
Bates-stamped

34:20 35:20 37:1
  37:22 38:14
battered 20:10 43:1
  43:6,12 44:5 45:1
battery 15:2 26:19
beat 7:15,17,18,19
  7:21 8:23 9:14
  11:24 15:3,4,5
began 8:18
behalf 2:5,10
belief 20:13,19,21
believe 6:5 21:24
  22:5,15 24:15
  28:16 29:9 36:23
  36:24 42:21
best 36:8
beyond 15:24
birth 47:12
bit 22:2
bottom 32:8,17
  36:20,20
box 31:19 32:9
  37:10
Boyle 1:4 7:7 15:13
  19:1,16,18 20:6
  21:9 22:16 24:9
  30:22,23 33:23
  35:24 36:4 40:5,9
  40:14 42:20,22
  47:20 48:2,4,10
  48:11,13,15 50:6
Boyle's 34:23 35:1
  35:7 36:21
brought 48:22
bruises 16:15

**C**

C 1:6 2:7 12:22
  32:10 50:7
call 10:11,15 11:23
  12:2,6 25:13,16
called 1:17 4:4
  25:21 39:5
calls 10:3 24:2 27:4
  29:3,12 45:19
car 8:24 9:2,5 13:6
  13:7 15:10,18,20
  18:9,19,21 19:9

19:20,24 20:3
  48:5,10,14
Carl 1:16 3:3 4:3
  4:11 50:17,21
  51:5
cars 18:17
case 7:7 31:24 32:6
  37:2 41:22 42:2
  45:13
cause 27:15
certificate 6:15,19
Certified 1:21 51:4
certify 51:5,10,14
charge 42:22 43:2
  45:13
charged 27:2
charging 42:19
Charles 1:4 7:7
  33:23 50:6
check 22:10
Chicago 1:7,8,9,10
  1:11,12,12,13,14
  1:22 2:4,9,11,12
  2:13,15 5:17 9:8
  9:11,13,19 10:1,8
  10:19 12:11 13:22
  13:24 14:3,19
  15:3,18,20 17:1
  18:1,4 20:11
  21:18,19,21 23:12
  23:24 24:14,19,23
  25:5,10 26:4,6,20
  26:21,24 27:1,3,9
  27:10,16,17,19
  28:2,15,24 29:16
  29:24 30:5,9,12
  30:16,20 40:3,4,8
  40:14 41:16,19
  42:6,11 46:7 47:5
  47:5,10,19,24
  48:6,9,18,22,23
  49:2,5,7,10 50:7,9
  50:10,11,12,13,14
  50:15,16 52:2,8
Chicago's 34:15
Chief 25:23 27:22
CIRCUIT 50:3
City 1:14 2:13 5:17

27:16 34:14 48:23
  49:2,7,10 50:16
Civil 1:18
Clarence 1:9 2:11
  37:19 50:9
clarify 42:15
class 6:12
clear 31:23 34:16
  35:20 36:1,7
close 13:14,16
clothing 16:17
College 6:17
come 20:21 21:18
coming 6:7,8
commenced 51:12
commencing 1:23
complainant 43:1,3
complaint 20:12
  31:5,6 38:24
  41:13 42:24 44:8
  44:24 45:13,17
  46:8
complaints 22:9,9
  22:17,18,21 41:12
  41:12 44:15
complete 47:6
CONNIE 2:7
considered 8:16
constitutes 50:19
contained 32:21
Continued 24:10
conversation 16:6
  22:24 23:3,15
  24:9 27:21 29:18
  30:9,11 41:2,5
conversations 9:24
  15:23 16:2 19:1
  19:15 20:2 24:13
  24:18,22 25:4,9
  28:1 30:15 40:12
  40:19,24 42:8
  45:16
COOK 50:2,3 51:3
correct 9:4,6,9 12:7
  12:17 21:4 23:1,2
  25:1,3,7 31:18
  32:11,18,22 33:17
  33:20 34:23 35:21

36:1,2,22 37:3,20
38:4 48:24 49:4
50:19
**counsel** 51:15,16
**County** 6:17 50:2,3
50:4 51:3
**couples** 39:1
**course** 5:7
**court** 1:1 5:5 45:12
49:7 50:3
**Courts** 1:19
**crime** 7:16
**criminal** 6:14 34:19
34:23 35:2,7,10
**Cross-Examinati...**
3:5 47:1
**CSR** 52:6,10
**CTD** 12:11
**CULBERTSON**
2:7
**current** 5:15 8:13
**currently** 7:17
**custody** 20:12
**cut** 32:1
**C.E** 1:13 50:15

**D**

**D** 3:1
**daily** 9:19
**dark** 36:7,14
**Darling** 1:13 8:5,6
8:10,11 18:2
23:16 32:7 33:13
33:14 38:9 41:1,3
41:7,18 43:8,12
43:18,23 45:24
50:14
**data** 35:20 36:1,7
**date** 8:8 24:17 28:3
35:9 37:5,11,12
45:17 46:7,11
47:12
**day** 1:23 16:20 25:8
50:18,22 51:12
52:2
**days** 9:22,22,23
**decides** 26:24
**declined** 28:10

**defendant** 12:12
**defendants** 1:15
2:10 40:4 50:16
**department** 2:13
6:7,8 9:8,11,14
10:1 26:24 27:2
27:10 48:18,22,23
49:6,11 50:4
**departments** 49:12
**deposition** 1:16 3:9
4:13,15,20 31:10
32:13 34:1 50:18
50:20 51:7,10,12
**depositions** 1:20
**Deputy** 25:23 27:22
**describe** 39:17
**described** 14:13
15:24
**desk** 25:20,21
30:24 31:1,4
**detain** 49:6
**detains** 27:16 48:22
**different** 34:13
**Direct** 3:4 4:6
**directing** 10:11
34:16
**direction** 18:14
51:9
**directly** 51:17
**disclosure** 34:15
**disheveled** 16:13
**dispatch** 10:11,15
10:17,22 11:5,23
12:2
**dispatched** 37:17
**dispatcher** 10:8
**district** 1:1,1,19
5:22,23 6:1 16:9
51:1
**DIVISION** 1:2
50:4 51:2
**document** 31:16
32:12,19 34:5,6
34:11,22 35:19,22
38:6
**documents** 38:13
38:14 39:2 49:3
**doing** 8:18 14:8

29:1
**drive** 19:11,14
**duly** 4:4 51:6
**duties** 7:11
**duty** 46:21

**E**

**E** 1:9 2:11 3:1,8
50:9
**earlier** 6:3 22:23
**early** 11:15,18
**East** 10:11,22 11:8
11:13 12:5,8
**EASTERN** 1:2
51:2
**ED** 2:2
**educational** 6:13
**Edward** 4:11
**effect** 23:8
**either** 21:18 27:22
28:3 46:14
**elaborate** 26:17
**Email** 2:16
**employee** 51:15,16
**ended** 42:19
**enter** 30:1,6
**errata** 50:20
**escorted** 17:17
**events** 33:16 38:5
**exact** 11:14
**exactly** 11:24 13:8
13:13,17 14:5
21:7 43:19,20
44:18
**examination** 1:17
3:4 4:6
**examined** 4:5
**excessive** 47:20
48:11
**excused** 49:19
**exhibit** 3:9 31:10
31:14 34:1,5,12
**explain** 28:11
**explained** 26:2,13
26:16,18 41:15,15
41:19 42:17 43:17
43:20
**extent** 39:1 45:19

**F**

**facility** 48:18
**fair** 4:24
**fairly** 36:3
**far** 18:8 27:20 31:1
41:4
**Federal** 1:18
**feet** 18:10 31:3 48:5
**felt** 23:10,24
**female** 39:24
**filed** 45:14
**filing** 35:15 45:17
46:8
**fill** 22:16,20 29:8
**filled** 22:12,13 31:4
31:6 32:5 44:8,23
**filling** 29:10 38:23
**financially** 51:17
**fingerprint** 38:16
**finished** 38:3
**first** 4:4 8:16,19,22
12:9 16:10 34:17
34:22 46:12 51:6
**five** 12:3,4 14:5
19:13,14
**flailing** 32:24 33:2
41:24 42:10,12
**flip** 35:19
**Floor** 52:7
**follow** 44:17
**follows** 4:5
**force** 6:21 47:20
48:11
**foregoing** 50:18
**foundation** 24:2
29:13 33:5 43:13
43:24
**four** 8:7,9 36:12
**FOX** 2:2
**front** 13:6 18:22,24
25:21 30:24 31:1
31:4
**further** 15:23 22:20
46:24 49:14 51:10
51:14
**future** 5:11

**G**

**Galarza** 1:10 2:11
22:6 24:15 28:16
46:11,15,17 50:11
**general** 31:24 32:5
41:21
**generally** 25:12
**gentleman** 25:17
25:21 26:12 28:5
28:7
**GIBBONS** 2:13
7:12 9:16 10:3,24
12:22 17:3,9 20:7
20:15,22 22:3
24:2 27:4,12 29:3
29:12,20 31:23
33:5 34:10,13,19
35:3 36:6,17 39:1
40:15,22 43:14
44:1,20 45:3,19
46:2 47:13 49:16
49:18
**Gillespie** 1:12 2:12
50:13
**given** 50:18,19
**go** 11:2 12:15 17:10
20:8,17 26:9
30:23 33:6 35:4
40:16 45:4
**going** 4:19,20,21
13:19 23:12 31:8
39:10
**Good** 4:8
**grab** 17:19
**Group** 34:12
**guess** 15:2 16:13
18:10 23:10 25:22
29:7 37:16 43:18
44:12
**guys** 23:11,24

**H**

**H** 3:8
**hand** 16:7 17:21
52:2
**handcuffs** 12:12,14
15:13
**handed** 17:1,7,12
34:4

**handing** 31:13
**handle** 23:11 24:1
**handled** 23:9
**hands** 17:20
**happen** 4:20
**happened** 7:2
  14:23 16:5 26:2
  40:20,21 41:4,15
  41:17 42:18 43:18
  43:20,23 44:19
**harmful** 48:1,14
**head** 5:12
**Heggie** 2:7 3:5 9:20
  10:5 17:5 24:6
  27:13 29:13 43:13
  43:24 47:2,16,17
  49:14
**height** 33:22
**HELEN** 2:13
**helen.gibbons@c...**
  2:16
**hereunto** 52:1
**high** 47:6,8,9
**highest** 6:10
**HINSHAW** 2:7
**history** 34:19,23
  35:1,2,8,11,14
**hour** 11:15,19
**hours** 8:13
**hurting** 48:15

**I**

**identification**
  31:14
**identified** 25:22,24
  27:24 28:5
**Illinois** 1:1,22 2:4,9
  2:15 50:1,3 51:1,2
  52:2,8
**incident** 7:1,3
  25:11 31:20 35:9
  37:2,7,10,14
  44:11 45:18 46:1
**includes** 34:13
**including** 45:22
**indicate** 34:22
**indicated** 14:6
  24:14 41:21 50:20

**indicates** 33:16
**indirectly** 51:17
**individual** 29:7
**individuals** 27:11
**information** 11:9
  32:21,22 35:21
  45:20
**inside** 19:4 23:2
  24:12 25:9 28:3
  40:9
**interact** 9:13,16
**interested** 51:17
**interference** 31:20
**interrupt** 34:10
**interview** 21:13,15
  23:2,6 26:11 28:6
  29:17 30:1,4,6,23
  31:2,7
**irate** 16:13
**issue** 47:15

**J**

**job** 10:7 38:21
**join** 10:5 17:5 24:6
  27:13
**joining** 6:21
**Jonathan** 2:2 31:23
**Jones** 13:18,21,23
**justice** 6:14

**K**

**K** 12:22
**keeper's** 38:21
**kid** 28:8
**kind** 32:1
**know** 4:23 12:18
  13:8 16:12 18:10
  21:5 22:12 23:23
  26:2,15 27:20
  28:13,14,16,22
  29:6,9,10,15,17
  29:22 31:24 32:5
  36:14 38:4 39:20
  42:19 43:21,22
  44:13 48:17,19
  49:5
**knowledge** 33:2,16
  36:8

**Ksiazek** 2:2 3:4 4:7
  7:13 9:17 17:6
  24:7 29:5 31:9,12
  32:2,4,20 34:3,12
  34:18,21 39:3
  45:21 46:3,24
  49:17
**Kwiatkowski** 1:11
  2:11 50:12

**L**

**lady** 39:13,15
**Lake** 6:17
**Larry** 1:7 2:11
  37:19 50:8
**LaSalle** 2:8,14
**LAW** 2:13 50:4
**left** 28:22 30:4,22
  36:11,13
**Let's** 12:15 36:11
  36:24
**little** 16:12,13,14
  22:2
**LLP** 2:7
**located** 8:21 11:22
  13:1 14:15 15:15
  37:9
**lockup** 38:21 48:18
**log** 21:12
**logged** 21:10,11
**long** 5:20 8:6 12:1
  19:11
**look** 34:16 36:11
**looked** 16:13
**Looking** 36:13
**lot** 13:16

**M**

**M** 1:21 4:11 51:4
  52:6
**man** 39:13,14
**March** 52:2
**mark** 31:9
**marked** 8:24 9:2
  31:11,13 34:2,4
  37:1
**marks** 16:15
**Martin** 1:14,16 3:3

3:9 4:3,11,12 5:15
  31:10 32:10 34:1
  47:3 50:15,17,21
  51:5
**Maywood** 25:24
  27:22
**mean** 12:13 13:16
  14:18 15:7 17:15
  21:11 22:8
**memory** 22:3
**mentioned** 6:3
**Michelle** 1:21 51:4
  52:6
**middle** 32:17
**midnight** 8:15
**military** 4:17 6:4,4
  6:11,23 49:13
**minutes** 12:3,4
  19:13
**Mischaracterizes**
  10:24 17:3 20:15
**moment** 45:10
**Moore** 1:9 2:11
  21:24 22:5 24:15
  28:15 37:19 43:4
  43:11,19,22 44:4
  44:10,18,24 46:11
  46:12 50:10
**morning** 4:8 11:15
  11:17,19
**multi-page** 34:11

**N**

**N** 3:1 4:11
**name** 4:9,10 22:10
  25:19,20 33:21
  37:22
**names** 21:22
**narrative** 32:16
  38:2,3
**need** 5:12,13 23:13
**needs** 10:21 11:7
**nephew** 26:15
  28:13
**never** 44:5
**normal** 46:21
**North** 2:8,14
**NORTHERN** 1:1

51:1
**NOTARY** 50:24
**notice** 1:18 16:15
  16:17
**noticed** 16:10
**numerous** 34:13

**O**

**Oak** 25:24 27:23
**oath** 5:3
**object** 47:14
**Objecting** 36:6
**objection** 7:12 9:16
  9:20 10:3,5,24
  17:3,5,9 20:7,15
  20:22 24:2,6 27:4
  27:12,13 29:3,12
  29:13,20 33:5
  35:3 36:17 39:1
  40:15,22 43:13,14
  43:24 44:1,20
  45:3,19 46:2
  47:13
**obligated** 5:2
**occasion** 10:10
**occurred** 21:1
  30:12 37:8,15
**occurrence** 10:2
  37:5,11,12
**October** 1:23 7:2,6
  7:20 8:1,11,14,19
  9:3 10:12 16:22
  24:17 36:5 37:6
  40:5,10,21 45:1,8
  46:1 47:18,24
  50:18 51:13
**offender** 33:9
**offender's** 33:21
**offense** 31:19,24
  32:6 41:22
**officer** 1:7,8,10,10
  1:11,12,13,16 3:3
  4:3 5:17,18,20
  6:12 7:10 8:6
  10:21 11:7 13:18
  13:21,23 15:6,8
  18:1,2,4 20:11
  21:24 22:5,5,6

23:16 26:3,19
31:21 32:9 33:13
33:14 37:23 38:9
41:1,1,2,18 42:11
42:21,23 43:2,8
43:12,18,19,19,23
44:4,18 45:24
46:10,10,11,12,14
46:15,17 47:3
50:8,9,11,12,13
50:14,15,17,21
51:5
**officers** 2:11 7:15
9:19 12:11 13:12
13:15,17,20,22,24
14:3,7,13,19 15:3
15:10,11 16:3
17:1,19,23 21:17
21:19,20,22 24:14
24:19,23 25:5,10
26:6,11 28:2,2,15
28:15 29:1,17
30:1,5,9,13,16,20
33:17 39:12 40:4
40:8,14,20 41:19
42:6 43:4,11,22
44:10,24 46:7
47:5,20 48:1,6,9
**okay** 4:19 5:14,15
6:10 7:1,22 12:15
13:10,14,19 14:6
14:20 15:12 18:19
21:8 22:7,12 23:6
25:14 26:7,15
27:21 28:13,24
29:16 31:8 32:2
32:15 33:15 35:14
35:19 36:11,20,24
37:5,18 38:1,8,9
38:13,13 41:5,14
41:18 44:4 46:4
46:23 47:16 48:17
**old** 47:13
**once** 29:1,1 30:20
38:3
**original** 37:2
**outside** 15:17,21
28:3 46:4

**overhear** 30:11,15

—— P ——

**page** 3:2,9 32:9,17
35:19 36:12 37:1
37:21 38:1
**pages** 34:22
**paperwork** 22:16
22:20 49:6
**park** 18:12 25:24
25:24 27:23
**parked** 18:14,22,22
18:23
**part** 34:15,17
**particular** 15:5
**parties** 51:15
**partner** 7:22,24 8:3
19:23 20:3 22:13
22:15 23:13,20
32:7 41:1
**pat** 42:1
**patrol** 5:18,20 7:10
7:15 8:24 9:2,5
**pat-down** 33:1,3
**people** 39:11
**person** 27:1
**personal** 51:9
**persons** 39:17
**pertaining** 1:20
**Petty** 6:12
**Phillips** 47:9
**phone** 2:4,9,15
25:13,16,22 26:12
26:13 28:7,11
52:8
**photograph** 36:7
36:11,14,15 38:15
**photographs** 36:12
36:21,21 38:18
**pick** 9:7,10
**picture** 36:7
**pictures** 35:24 36:3
**place** 23:4 41:5
46:19 51:11
**placed** 16:8 19:4,8
20:13,19 30:22
**plaintiff** 1:5,17 2:5
7:7 12:13,14

14:14 15:2,12
16:7,10 17:1,7,12
18:8 22:23 26:1
26:19 29:18 30:9
30:13 33:2,10
38:16,20 45:7
47:21 48:1 50:6
**plaintiff's** 36:15
**please** 4:9
**point** 14:8 19:12
20:6 21:9 24:12
24:17 25:8 26:7
26:10 29:24 30:4
30:8 40:5,9 43:18
44:23
**police** 1:7,8,9,10,11
1:12,13 2:11 5:17
6:7,8 9:8,11,14
10:1,9 13:24
14:19 15:3,18,20
18:16 20:11 21:19
21:19 25:23,24
26:6,19,24 27:1
27:10,22 31:14
41:16,19 42:21,23
43:1 47:5,19,24
48:6,9,18,22,23
49:2,6,11,11,13
50:8,9,11,12,13
50:14,15
**polo** 36:15
**portion** 37:10
**position** 5:16 7:9
**possibly** 11:21
**prepare** 38:9
**prepares** 49:2
**preparing** 35:15
**presence** 46:4
**present** 14:20
23:15,17 24:15
39:11 41:8
**presented** 49:7
**pretty** 11:6
**prevention** 7:16
**previous** 11:1 17:4
20:16
**printed** 36:13
**prior** 6:6,21 7:6

11:8 32:12 49:10
**prisoners** 21:12
**privilege** 45:20
**probable** 27:15
**probably** 6:20
18:18 37:16 41:6
**problem** 23:9
**procedure** 1:19
15:9
**process** 15:4 26:21
27:19
**processed** 21:14
22:7 39:5
**processes** 27:17
**processing** 16:9
24:10 27:2 41:6
48:23
**properly** 23:11
24:1
**protective** 33:1,3
**provided** 32:16
50:20
**public** 31:20 50:24
**pulled** 14:24 41:24
**pulling** 33:1,3
**purposes** 5:5 31:14
**pursuant** 1:17,18
**put** 32:1

—— Q ——

**question** 4:23 13:19
47:16
**questions** 4:21,22
5:6 45:11 46:24
49:14,16
**quickly** 38:3

—— R ——

**R** 2:2 4:11
**radio** 9:5,7
**Randolph** 52:7
**rank** 6:10
**read** 32:15 33:9,10
33:11,22 38:2
50:17
**really** 36:19
**reask** 4:23
**reason** 45:12

**recall** 7:2,4 8:18,21
10:17 11:12,16
12:1 13:3 14:8,15
14:22 15:15 16:18
21:2,22 22:22
23:3,18 25:19
30:19 35:10 39:7
39:10,12,16,24
43:7 46:19
**receive** 6:15
**received** 6:18 10:14
12:5
**receiving** 12:2
**recognize** 34:5
**record** 4:10 5:8,12
31:24 36:6 50:19
**reduced** 51:8
**reflect** 36:4
**regarding** 8:20
49:6
**regards** 28:14
40:13,20
**relation** 13:15
45:13
**relative** 51:14,16
**Relatively** 13:16
**remember** 6:18
10:14 15:19 25:16
**remind** 4:19
**rephrase** 4:23
**report** 22:11,13,14
22:15 31:15,24
32:6 34:19,23
35:2,2 37:2 38:12
38:15,24 41:13,22
42:2,16
**reported** 51:7
**reporter** 1:21 5:5
51:5
**reporting** 32:9
37:22
**reports** 29:7,11
34:14 35:15 49:3
**represent** 10:20
**representing** 47:4
**requested** 31:11
34:2
**reserve** 49:18

resisting 42:21,22
respond 41:14
response 23:19,20
restraints 16:7
  17:21
review 32:12
ride 19:21,24 20:3
right 9:5,8 18:6,6
  18:21,24 21:3
  24:24 28:18 31:15
  33:10,19 37:12,19
  37:23 44:6 48:7
  48:21
rights 33:9,11
ripped 36:16
room 2:14 21:13,15
  23:2,7 28:6 29:18
  30:1,5,6,23 31:2,7
roughly 8:7,9 18:10
  28:21
Rules 1:18

**S**

S 3:8
saw 12:12,16 14:1,2
  15:12,16 18:18
  39:17
saying 43:11,16
says 32:9 33:9 37:6
  37:12,18
Scalise 1:21 51:4
  52:6
scene 12:2 13:2
  14:21,24 16:3
  18:13 20:24 21:18
  24:23 25:2 35:13
  39:10,11 40:20
  43:16 47:18,23
school 47:6,8,9
search 35:1,7,14
searched 35:10
  39:5
second 6:12 12:15
security 47:14
see 12:9 14:4,20
  21:24 29:23 30:5
  30:8 36:10,16
  40:3,8 46:17

47:19,23 48:10,14
seeing 39:12 46:12
seen 7:7 45:7 46:10
  46:13,14,15
sergeant 12:19
  13:10,14,23 14:7
  15:1,24 16:3,6
  20:24 43:17
series 4:21
set 52:1
shake 5:12
sheet 35:21 36:1
sheets 50:20
shift 8:16,19,22
shirt 36:15
shorter 39:23
Shorthand 1:21
  51:4
shoulders 36:22
show 10:9 22:2
side 18:15
sidewalk 13:4
sign 42:24
signature 32:8
signed 22:9,10 39:2
  44:15
signing 20:12
silently 32:16
similar 38:14
sir 45:11
situation 10:2
  11:10 26:14,16
  28:12 43:17
six 14:5
slash 31:20
sorry 6:24 12:14
  26:8 34:12 38:16
  45:22
sort 38:14
south 18:15
speak 26:5,12 28:8
specific 15:19
specifically 13:3
  42:3 44:5
specified 51:11
speculation 10:4
  24:3 27:5 29:3,12
spell 12:20

spelling 4:9
spoke 15:1 29:19
  45:24
spoken 40:13 46:6
squad 48:5,10,13
SS 50:1 51:2
standing 13:3,6,13
  14:7,10 15:17,20
  18:6
STAR 1:8,9,13,14
  50:8,10,14,15
started 8:22
state 4:9 41:13 43:5
  50:1,17 51:2
stated 28:11,12
  42:16 43:7
statement 33:19
  38:4
statements 23:21
states 1:1,19 31:20
  31:21 32:24 33:15
  35:22 37:6,18
  51:1
stating 43:1
station 15:10 19:10
  19:12,15,19 20:6
  21:3,6,8,18,23
  22:24 24:13 25:6
  25:9,15 28:3,4,17
  28:22 29:2 30:20
  35:11 40:9
stenographically
  51:8
stood 18:2
street 1:22 2:3,8,14
  10:11,23 11:8,13
  12:5,8 13:4,5,9
  14:10,12,16 18:12
  18:15 25:2 40:5
  40:21 46:18 52:7
strike 40:4,9
striking 40:14
SUBSCRIBED
  50:22
sue 23:12
sued 40:1
Suite 1:22 2:3,8
supervisor 12:10

12:16,18 13:1
sure 5:6,11 11:14
  11:18,18,24 12:21
  13:8,13,17 14:5
  18:11 21:7 23:5
  24:21 25:20 26:9
  28:9 32:2 34:18
  36:10 39:24 43:10
  43:20 48:20 49:9
sweaty 16:14
sworn 4:1,5 50:22
  51:6

**T**

T 3:8 4:11 12:22
take 15:4,9 38:18
  41:5
taken 1:17,20 4:13
  4:16 20:12 21:12
  21:15,16 51:11
talk 5:6 7:1,3 9:18
  44:10,12,14,24
talked 42:3,5
talking 23:23 41:11
taller 39:23
tan 14:20
tell 5:3 36:19 41:18
ten 4:18 19:13
ten-minute 19:14
testified 4:5 45:12
  48:4
testify 51:6
testimony 11:1
  17:4 20:16 32:13
  50:18,19
Thank 32:3 49:15
thanked 26:14
  28:12
things 4:20 23:9
think 12:22 14:6
  25:23 29:10 43:21
  46:13
third 46:13
three 8:7,9
time 4:15 11:12,14
  21:5 23:3 28:10
  28:18,19,21 37:17
  39:7 46:12 51:11

today 4:21 5:3 7:3
  32:13
today's 8:8
told 42:14,15 43:12
  43:18,23 44:5
top 31:19 36:11,13
  37:10
Torres 1:7 2:11
  22:6 24:15 28:15
  37:19 43:4,12,19
  43:23 44:4,11,18
  44:24 46:10,14
  50:8
transcript 50:18,19
transmissions 9:8
  9:10
transport 39:6,7
transported 16:9
  19:10
travel 8:24
traveling 9:2
true 33:19 50:19
truth 5:3 51:6
try 5:7
trying 42:1
turn 36:24 37:21
two 13:24 15:10,11
  34:22 36:21 39:17
two-page 34:20
typewriting 51:8
typical 10:1
T-shirt 36:15

**U**

uh-huh 5:11
uh-uh 5:11
uncle 25:18 26:1
  28:7
understand 4:22
  5:2,8,13
understanding
  20:5,10 24:20
  26:23 27:8,18
uniform 16:20
unit 18:20
United 1:1,19 51:1
university 1:7,8,9
  1:10,11,12 2:10

2:12 9:11,13,19
9:24 10:8,18
12:11 13:22 14:3
14:19 15:3,17,20
16:24 18:1,4
20:11 21:19,21
23:11,12,24 24:14
24:19,23 25:5
26:4,4,5,20,20,24
27:3,9,10,16,18
28:2,14,24 29:16
29:24 30:5,8,12
30:16,19 40:3,4,8
40:13 41:16,19
42:5,11,17 46:7
47:4,5,19,24 48:6
48:9,17,21 49:5
50:7,9,10,11,12
50:13

**V**

**V** 1:13 50:14
**vague** 7:12 9:16,20
20:7,15 27:4 35:3
40:15 44:20
**vehicle** 14:20 16:8
16:8 17:13,14,16
17:22,24 18:18,21
18:23 19:2,4
20:14,20
**vehicles** 14:14,15
14:18 18:16
**verbal** 5:12
**version** 38:15
**victims** 37:18
**viewing** 31:16
32:19 34:6 38:6
**Vincent** 8:5 32:7
**vs** 1:6 50:7

**W**

**W** 12:22
**walked** 16:8 17:13
17:14,16,21,23
18:2,4,9 19:2 48:5
**walking** 48:10,13
**want** 32:1 34:16
42:15 44:12,14

**wanted** 26:1,12,15
28:12
**warehouse** 35:21
36:1,8
**wasn't** 16:12 32:2
**watch** 46:13
**way** 16:19 17:20
18:12 23:9 48:1
48:14
**wearing** 16:19
**weight** 33:22
**Wendell** 47:9
**went** 26:10,13 28:6
28:10 29:17
**West** 1:22 2:3 52:7
**westbound** 18:14
**We'll** 49:18
**we're** 7:1,3 49:17
**we've** 40:13
**whereabouts** 37:17
**whereof** 52:1
**white** 39:20
**withdraw** 47:16
**witness** 3:2 4:1,4
9:21 10:6 11:3
12:23 17:11 20:9
20:18,23 22:4
24:4 27:6,14
29:14,21 31:16,17
32:19 33:7 34:6,7
35:5 36:9,18 38:6
38:7 40:17,23
43:15 44:2,21
45:5 49:19 52:1
**witnessed** 48:4
**Witzack** 12:19
13:11,14,23
**work** 7:21,22 49:11
**worked** 8:6
**working** 7:24 8:3
8:10,11,14 15:8
49:10
**works** 46:13
**worry** 23:13

**X**

**X** 3:1,8

**Y**

**Yeah** 34:18
**years** 4:18 5:21 8:7
8:9
**young** 39:13,13,14
39:14

**Z**

**Z** 12:22

**#**

**#1012** 1:9 50:10
**#1028** 1:8 50:8
**#17246** 1:14 50:15
**#19135** 1:13 50:14

**0**

**0003** 35:20
**0008** 37:1
**0009** 37:22
**0010** 38:1
**0011** 38:14
**0012** 38:14
**084-004616** 52:10
**09** 1:6 50:7

**1**

**1** 3:10 31:10,14,19
34:20
**1:00** 11:16
**10-1** 10:18,20,22
11:6
**10:37** 1:23 51:13
**1080** 1:6 50:7
**1099** 15:6,7 18:20
**11** 5:21 38:13
**1435** 10:11,22 11:8
11:13 12:5
**15th** 52:2
**1535** 12:8
**18th** 7:2,6,20 8:1
8:11,14,19 9:3
10:12 16:22 24:17
36:5 37:6 40:5,10
45:1,8 46:1 47:18
47:24 48:6
**19** 6:5,20
**197** 33:23

**1990** 6:5
**1999** 6:5

**2**

**2** 3:11 18:10 31:3
34:1,5,20 48:5
**2000** 6:20,20
**2007** 50:23
**2008** 7:2,6,20 8:1
8:11,14,19 9:3
10:12 16:22 24:17
36:5 37:6 40:6,10
45:2,8 46:1
**2009** 1:24 50:18
51:13
**2010** 52:3
**205** 52:7
**21** 18:19
**21st** 5:23 6:1 16:9
19:11
**2131** 15:5 18:18,19
18:21
**2132** 7:18 9:14 15:4
**222** 2:8
**236-6936** 52:8
**237** 37:6,14,16
**26-A** 34:15
**28th** 1:23 50:18
51:12

**3**

**3** 18:10 35:19 48:5
**30** 2:14
**300** 1:22 2:3,8
**31** 3:10
**312** 2:4,9,15 52:8
**330** 1:22 2:3
**34** 3:11
**345-8877** 2:4

**4**

**4** 3:4
**4:00** 11:20
**41** 33:21
**47** 3:5

**5**

**5** 33:23

**5th** 52:7
**53rd** 10:11,22 11:8
11:13 12:5,8
18:12,14 25:2
40:5,21

**6**

**60601** 2:9
**60602** 2:15
**60606** 2:4 52:8

**7**

**704-3000** 2:9
**744-3982** 2:15

**8**

**8** 37:1
**8:00** 8:15
**80** 33:16
**80's** 33:15

**9**

**9** 33:23
**900** 2:14
**96** 32:9
**98** 6:24
**99** 6:24

EXHIBIT 1

CHICAGO POLICE

INTERFERENCE WITH PUBLIC OFFICER

MOORE, CLARENCE (U of C P.D.)

JAMES, LARRY (U of C P.D.)

BOYLE, CHARLES D.D.

5555 S. ELLIS

6133 S. CHAPPEL

SEE NARRATIVE

UNIVERSITY OF CHICAGO

C. MARIA 17246

EXHIBIT
Maria #1
10/28/09

EXHIBIT

R.D. NO.
HP - 634061

TRANSPORTED TO 021 DIST. for FURTHER PROCESSING.
D# 2120, 2131 ON SCENE. A/O'S HAVE NO
KNOWLEDGE OF EVENTS

COMPLT INFO: 34-2

04DEC08

0900 HRS

FORM OFFENSE CODE
☐ 1. CORRECT
☐ 2. REVISED

REV. CODE

OFFICER REASSIGNED — DATE
STAR NO.

VICTIM IDENTIFIERS
☐ 1. CORRECT
☐ 2. REVISED

N/VICTIM NO. | REVISED NAME

VALUE OF PROPERTY TAKEN/RECOVERED
☐ 1. DNA | ☐ 2. VERIFIED | ☐ 3. CORRECTED

MONEY
☐ 2. JEWELRY ☐ T: $ ☐ R:

☐ 3. FURS | ☐ 4. CLOTHING ☐ T: $ ☐ R: | ☐ 1. CONSUM. GOODS ☐ T: $ ☐ R:

SERIAL NOS. OR IDENTIFICATION NOS.
☐ 1. DNA | ☐ 2. VERIFIED | ☐ 3. CORRECTED

REMARKS (PERTINENT INFORMATION NOT ON ORIGINAL REPORT)

[4/OR METHOD CODE]

STATUS
☐ 3. CLEARED CLOSED | ☐ 4. CLEARED OPEN | ☐ 5. EXC. CLEARED OPEN

METHOD ASSIGNED
☐ 1. FIELD | ☐ 2. ADMIN.
☐ 3. SUMMARY

☐ 3. IN PROGRESS | ☐ 2. UNFOUNDED
☐ 6. SUSPENDED | ☐ 6. EXC. CLRD. CLOSED
☐ 1. CLOSED-NON-CRIMINAL

FOR USE BY BUREAU OF INVESTIGATIVE SERVICES ONLY

[UNIT NO.]

OFFICER ASSIGNED
STAR NO. | OFFICER ASSIGNED STAR NO. | I DATE ASSIGNED | REASSIGNED

IF CASE IS CLEARED, HOW CLEARED (USE THIS BOX FOR SINGLE CLEAR UP OR FIRST CLEAR UP OR MULTIPLE CLEAR UP LIST)
☐ 1. ARREST & PROSECUTION | ☐ 2. DIRECTED TO FAMILY COURT | ☐ 1. COMPLAINANT REFUSED TO PROSECUTE | ☐ 3. COMMUNITY ADJUSTMENT

REVISED ADDRESS

REVISED PHONE NO.

I HAVE REVIEWED THIS REPORT
AND IS MY SIGNATURE INDI-
CATE THAT IT IS ACCEPTABLE.

SUPERVISOR'S SIGNATURE

SUPV. STAR NO. | INVESTIGATIVE FILE
☐ 1. YES ☐ 2. NO | ☐ 1. YES

I DATE (DAY-MO-YR.)

PREPARED BY — SIGNATURE | STAR NO. | I DATE (DAY-MO-YR.) | APPROVED BY — SIGNATURE

STAR NO. | I DATE (DAY-MO-YR.)

FILL IN THE FULL AMOUNT OF ALL ITEMS WHOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE REVERSE. THE NATIVE OR ALTERNATIVE IN A SUPPLEMENTARY REPORT.

☐ 6. FIREARMS ☐ T: $ ☐ R: | ☐ 7. NARCO/DANG. DRUGS ☐ T: $ ☐ R: | ☐ 8. OTHER ☐ T: $ ☐ R:

000013

**Exhibit 2**

1



**CHICAGO POLICE DEPARTMENT**
3510 South Michigan Avenue/Chicago, Illinois 60653
Identification Section

**CRIMINAL HISTORY REPORT**



GPO-31895C (REV 7/04)

## BOYLE, CHARLES D
**IR #**
**1958082**
**SID #**
**FBI #**
**IDOC #**

CPD photo

MALE
BLACK
5'09"
197 lbs
EYES : BRO
HAIR : BLK
HAIR STYLE : SHORT
COMPLEXION : DRK

Current Arrest Information:

| | |
|---|---|
| Date of Birth: | 07-MAY-1987 |
| Age: | 21 years |
| Place of Birth: | ILLINOIS |
| SSN #: | 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 |
| Drivers License #: | B40014487100 |
| Drivers Lic. State: | UNITED STATES (AIRCRAFT, US MILITARY, FEDERAL VEH) |

Scars, Marks &Tattoos:

Tattoo Cloud on Upper Right Arm

Tattoo Praying Hands on Upper Left Arm

Key Historical Identifiers:

| Alias or AKA used | Date Used | Dates of Birth Used | Social Security Numbers Used |
|---|---|---|---|
| BOYLE, CHARLES D | 18-OCT-2008 | 07-MAY-1987 | 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 |

Criminal Justice Summary: Total arrests: 1 (0 Felony, 1 Misdemeanor)          Total convictions: 0

━━━━━━━━━━━━━━━━━━━━━━━━━━ ARREST ━━━━━━━━━━━━━━━━━━━━━━━━━━

| | | | |
|---|---|---|---|
| Arrest Name: | **BOYLE, CHARLES D** | Arrest Date: | **18-OCT-2008**   Holding Facility: CPD - DISTRICT 002 MALE |
| Date of Birth: | **07-MAY-1987** | Arrest Address: | **1435 E 53RD ST CHICAGO, IL 60615** |
| DCN or CB: | **017392877** | Residence: | **6733 S CHAPPEL AVE CHICAGO, IL 60649** |
| Officer: | **DARLING** | Officer Badge#: | **19135**   Arresting Agency: CPD |

| Count | Class | Type | Statute | Arrest Charge Description | Inchoate |
|---|---|---|---|---|---|
| [2] | A | M | 720 ILCS 5.0/31-1-A | Resist/Obstruct - Peace Officer/ Correctional Emp | OFFENSE AS CITED |

**COURT CHARGES/DISPOSITION**

| Statute | Charge | Class | Case# |
|---|---|---|---|
| 720-5/31-1-A | RESIST/OBSTRUCT - PEACE O | M | 08127795101 |

Disposition: DISMISSED                                    Disposition Date: 20-JAN-2009
Sentence:                                                 Sentence Date:

Disposition: NOLLE PROSEQUI                               Disposition Date: 20-JAN-2009
Sentence:                                                 Sentence Date:

Disposition: DISMISSED                                    Disposition Date: 20-JAN-2009
Sentence:                                                 Sentence Date:

Disposition: NOLLE PROSEQUI                               Disposition Date: 20-JAN-2009
Sentence:                                                 Sentence Date:

**EXHIBIT**
martin #2
10/28/09

Boyle, 09 C 1080
FCRL 0001

1

***End of Report***

This Chicago Police Department IR rap-sheet should not replace the use of the Illinois State Police statewide criminal history transcript, which may contain additional criminal history data and can be obtained by performing a CQR1 inquiry via your LEADS terminal.

20-MAR-2009 12:03                                                                          Requested by: IL16CPDAAI

Boyle, 09 C 1080
FCRL 0002

1

# CLEAR Data Warehouse

**BOYLE, CHARLES**
**CB# 17392877**

Charge(s) = RESIST/OBSTRUCT - PEACE OFFICER/
CORRECTIONAL EMP

IR# = 1958082

M/BLK/21 - Height 509 / 197 lbs.

DOB= 07-MAY-1987

Arrest Date = 18-OCT-2008

Address of Arrest = 1435 E 53RD ST

Beat of Arrest =2132

LKA= 6733 S CHAPPEL AVE

City = CHICAGO, IL

Beat of Residence = 0331

REPORT DATE= 20-March-2009 10:50:37 AM
REQUESTED BY= JL16CPDAAI
FOR OFFICIAL POLICE USE ONLY!
NOT FOR DISSEMINATION!



1

# CLEAR Data Warehouse



**BOYLE, CHARLES**
**CB# 17392877**

Charge(s) = RESIST/OBSTRUCT - PEACE OFFICER/ CORRECTIONAL EMP

IR# = 1958082

M/BLK/21 - Height 509 / 197 lbs.

DOB= 07-MAY-1987

Arrest Date = 18-OCT-2008

Address of Arrest = 1435 E 53RD ST

Beat of Arrest = 2132

LKA = 6733 S CHAPPEL AVE

City = CHICAGO, IL

Beat of Residence = 0331

REPORT DATE= 20-March-2009 10:51:03 AM
REQUESTED BY= IL16CPDAAI
FOR OFFICIAL POLICE USE ONLY!
NOT FOR DISSEMINATION!

1

# CLEAR Data Warehouse

**BOYLE, CHARLES**
**CB# 17392877**

Charge(s) = RESIST/OBSTRUCT - PEACE OFFICER/ CORRECTIONAL EMP

IR# = 1958082

M/BLK/21 - Height 509 / 197 lbs.

DOB= 07-MAY-1987

Arrest Date = 18-OCT-2008

Address of Arrest = 1435 E 53RD ST

Beat of Arrest = 2132

LKA = 6733 S CHAPPEL AVE

City = CHICAGO, IL

Beat of Residence = 0331

REPORT DATE= 20-March-2009  10:51:25 AM
REQUESTED BY= IL16GPDAAI
FOR OFFICIAL POLICE USE ONLY!
NOT FOR DISSEMINATION!



1

# CLEAR Data Warehouse

**BOYLE, CHARLES**
**CB# 17392877**

Charge(s) = RESIST/OBSTRUCT - PEACE OFFICER/ CORRECTIONAL EMP

IR# = 1958082

M/BLK/21 - Height 509 / 197 lbs.

DOB = 07-MAY-1987

Arrest Date = 18-OCT-2008

Address of Arrest = 1435 E 53RD ST

Beat of Arrest = 2132

LKA = 6733 S CHAPPEL AVE

City = CHICAGO, IL

Beat of Residence = 0331

REPORT DATE= 20-March-2009  10:52:06 AM
REQUESTED BY= IL16CPDAAI
FOR OFFICIAL POLICE USE ONLY!
NOT FOR DISSEMINATION!



1

# CLEAR Data Warehouse

**BOYLE, CHARLES**
**CB# 17392877**

Charge(s) = RESIST/OBSTRUCT - PEACE OFFICER/
CORRECTIONAL EMP

IR# = 1958082

M/BLK/21 - Height 509 / 197 lbs.

DOB = 07-MAY-1987

Arrest Date = 18-OCT-2008

Address of Arrest= 1435 E 53RD ST

Beat of Arrest = 2132

LKA = 6733 S CHAPPEL AVE

City = CHICAGO, IL

Beat of Residence = 0331

REQUESTED BY= IL16CPDAAI on 20-March-2009 @ 10:50:18 AM
FOR OFFICIAL POLICE USE ONLY! NOT FOR DISSEMINATION!



**CHICAGO POLICE DEPARTMENT**
# ORIGINAL CASE INCIDENT REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(5/03)-C)

RD #: **HP634061**

EVENT #: 0829202513

Case ID: 6552348 CASR229

This Document is not an official copy. It is a computerized version of data entered from an original case report. A copy of the original case report can be obtained from the Records Division

**INCIDENT**

**ASSIGNED TO ADMINISTRATIVE PERSONNEL**

IUCR: 3710 - Interfere With Public Officer - Resist/Obstruct/Disarm Officer

Occurrence Location: 1435 E 53rd St
Chicago IL 60615
304 - Street

Beat: 2132

Unit Assigned: 2132
RO Arrival Date: 18 October 2008 02:43
# Offenders: 1

Occurrence Date: 18 October 2008 02:37

**NON-OFFENDER**

**VICTIM**

Name: MOORE, Clarence
Res: 5555 S Ellis Ave
Chicago IL 60637

Beat: 2133

Beat: 5100

Demographics
Male
Black

Age: 55 Years

Other Communications and Availability
Business Phone: 773-702-8181

**VICTIM**

Name: TORRES, Larry
Res: 5555 S Ellis Ave
Chicago IL 60637

Beat: 2133

Beat: 5100

Demographics
Male
White

Age: 40 Years

Other Communications and Availability
Business Phone: 773-702-8181

**SUSPECTS**

**Suspect # 1**

**In Custody**

Name: BOYLE, Charles D
Res: 6733 S Chappel Ave
Chicago IL 60649

Beat: 0331

Demographics
Male
Black
5'09,
197 lbs
Brown Eyes
Black Hair
Dark Complexion

Age: 21 years

Other Communications and Availability

**RELATIONSHIP**

**RELATIONSHIP**

(Victim)
MOORE, Clarence

Is a No Relationship of

( Offender )
BOYLE, Charles,D

RD #: HP634061

Print Generated By: KOOISTRA,MARK (PC0D768)

Page 1 of 2

20-MAR-2009 12:04



Boyle, 09 C 1080
FCRL 0008

**Chicago Police Department - Incident Report**

RD #; HP634061

| | | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|---|
| PERSONNEL | Reporting Officer | 19135 | #33994 | DARLING, Vincent | (PC0R101) | 19 Oct 2008 09:03 | 021 | 2132 |
| | Reporting Officer | 17246 | #49591 | MARTIN, Carl, E | (PC0S916) | 19 Oct 2008 09:03 | 021 | 2132 |

Boyle, 09 C 1080
FCRL 0009

1

**CLEAR Data Warehouse**
**Arrest Narrative For Arrest ID 15290500**
**Report Date= 3/20/2009**

The narrative contained herein has been transcribed from the original arrest report and is therefore not official!

| NARRATIVE |
| --- |
| IN SUMMARY : A/O'S RESPONDED TO ASSIST UNIVERSITY OF CHICAGO POLICE, UPON ARRIVAL SPOKE WITH U OF C POLICE OFFICER MOORE, CLARENCE #1012, AND U OF C OFFICER TORRES, LARRY #1028, WHO RELATED TO A/O'S THAT THE ABOVE LISTED OFFENDER BOYLE, CHARLES D., REFUSED TO PRODUCE ID UPON AN INVESTIGATORY STREET STOP, AND DURING A PROTECTIVE PATDOWN OFFENDER BECAME COMBATIVE BY FLAILING HIS ARMS AND PULLING AWAY. OFFENDER TAKEN INTO CUSTODY ON SIGNED COMPLAINTS, READ RIGHTS PER MIRANDA AND TRANSPORTED TO 021 DISTRICT FOR FURTHER PROCESSING. OFC TORRES ADVISED OF COURT INFO. |

Boyle, 09 C 1080
FCRL 0010

**CHICAGO POLICE DEPARTMENT**
## ARREST REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.420C(REV. 6/30)

**FINAL APPROVAL**

CB #: 17392877
IR #: 1958082
YD #:
RD #: HP834061
EVENT #: 0829202513

| ARREST REPORTING |
|---|

**OFFENDER**

Name: **BOYLE, Charles D**
Res: 6733 S Chappel Ave
Chicago, IL 60649
773-363-2575
Empl: Church
Maintenance
DOB: 07 May 1987
AGE: 21 years
POB: Illinois
SSN: 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
DLN: B40014487100 -US
ARMED WITH Unarmed

Beat: 331

Male
Black
5' 09"
197 lbs
Brown Eyes
Black Hair
Short Hair Style
Dark Complexion

Marks: Tattoo Cloud on Upper Right Arm
Tattoo Praying Hands on Upper Left Arm

**INCIDENT**

Arrest Date: 18 October 2008 02:56     TRR Completed? No
Location: 1435 E 53rd St                            Beat: 2132
Chicago, IL 60615
304 - Street
Holding Facility: District 002 Male Lockup
Resisted Arrest? Yes

Total No Arrested: 1      Co-Arrests      Assoc Cases
DCFS Ward ? No

Dependent Children? No

**CHARGES**

| | | |
|---|---|---|
| 1. | Offense As Cited | **720 ILCS 5.0/31-1-A** |
| | | RESIST/OBSTRUCT - PEACE OFFICER/ CORRECTIONAL EMP |
| | | Class A - Type M |
| 2 | Offense As Cited | **720 ILCS 5.0/31-1-A** |
| | | RESIST/OBSTRUCT - PEACE OFFICER/ CORRECTIONAL EMP |
| | | Class A - Type M |

Victim

**RECOVERED NARCOTICS**

IR #: 1958082

NO NARCOTICS RECOVERED

**WARRANT**

CB #: 17392877

NO WARRANT IDENTIFIED

Print Generated By: NITSCHE, Lawrence ( IL16CPDAAI )          Page 1 of 5          20 MAR 2009 12:10
powered by: CLEAR Technology

Boyle, 09 C 1080
FCRL 0011

Chicago Police Department - ARREST Report

CB # 17499617
BOYLE, Charles

## ARREST REPORTING

**NON-OFFENDER(S)**

**ARRESTEE VEHICLE**

NO ARRESTEE VEHICLE INFORMATION ENTERED

**PROPERTIES**

Confiscated Properties :
All confiscated properties are recorded in the e-Track System. This system can be queried by the inventory number to retrieve all official court documents related to evidence and/or recovered properties.

PROPERTIES INFORMATION FOR     BOYLE, Charles,     NOT AVAILABLE IN THE AUTOMATED ARREST SYSTEM.

**INCIDENT NARRATIVE**

(The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following)

IN SUMMARY : A/O'S RESPONDED TO ASSIST UNIVERSITY OF CHICAGO POLICE, UPON ARRIVAL SPOKE WITH U OF C POLICE OFFICER MOORE, CLARENCE #1012, AND U OF C OFFICER TORRES, LARRY #1028, WHO RELATED TO A/O'S THAT THE ABOVE LISTED OFFENDER BOYLE, CHARLES D., REFUSED TO PRODUCE ID UPON AN INVESTIGATORY STREET STOP, AND DURING A PROTECTIVE PATDOWN OFFENDER BECAME COMBATIVE BY FLAILING HIS ARMS AND PULLING AWAY. OFFENDER TAKEN INTO CUSTODY ON SIGNED COMPLAINTS, READ RIGHTS PER MIRANDA AND TRANSPORTED TO 021 DISTRICT FOR FURTHER PROCESSING. OFC TORRES ADVISED OF COURT INFO.

**COURT INFO**

| | |
|---|---|
| Desired Court Date: | 04 December 2008 |
| Branch: 34-2 | 155 W 51ST ST - Room |
| Court Sgt Handle? | Yes |
| Initial Court Date: | 04 December 2008 |
| Branch: 34-2 | 155 W 51ST ST - Room |
| Docket #: | |

**BOND INFO**

| | |
|---|---|
| Bond Date: | 18 October 2008 11:8 |
| Type: | Recognizance |
| Receipt #: | I6770331 |
| Amount: | $1,000.00 |

Boyle, 09 C 1080
FCRL 0012

Chicago Police Department - ARREST Report

CB #: [ 17392877 ]
BOYLE, Charles

## ARREST REPORTING

| | | | | |
|---|---|---|---|---|
| **ATTESTING OFFICER:** | | | | |
| I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief. | | | | |
| Attesting Officer: | #19135 | DARLING, V (PC0R101) | 18 OCT 2008 04:39 | |
| **ARRESTING OFFICER(S):** | | | | **Beat** |
| 1st Arresting Officer: | #19135 | DARLING, V (PC0R101) | | 2132 |
| 2nd Arresting Officer: | #17246 | MARTIN, C E (PC0S916) | | 2132 |
| **APPROVING SUPERVISOR:** | | | | |
| Approval of Probable Cause : #339 | | STOPPA, K A (PC0F280) | 18 OCT 2008 04:40 | |

(Left margin vertical text: REPORTING PERSONNEL)

Boyle, 09 C 1080
FCRL 0013

**Chicago Police Department - ARREST Report**

CB #: 17392877

BOYLE, Charles

## ARREST PROCESSING REPORT

| | |
|---|---|
| Holding Facility: District 002 Male Lockup | Time Last Fed: 18 October 2008 07:22 |
| Received in Lockup: 18 October 2008 07:21 | Time Called: Phone#: |
| Prints Taken: 18 October 2008 07:58 | Cell #: 2/3 |
| Reimprints Taken: Yes | |
| Photograph Taken: 18 October 2008 07:57 | Transport Details : 2PO 2132 18-OCT-2008 03:00 |
| Released from Lockup: 18 October 2008 11:15 | |

**LOCKUP KEEPER PROCESSING**

| VISUAL CHECK OF ARRESTEE | | ARRESTEE QUESTIONNARIE | |
|---|---|---|---|
| Is there obvious pain or injury? | No | Presently taking medication? | No |
| Is there obvious signs of infection? | No | (If female)are you pregnant? | No |
| Under the influence of alcohol/drugs? | No | First time ever been arrested? | No |
| Signs of alcohol/drug withdrawal? | No | Attempted suicide/serious harm? | No |
| Appears to be despondent? | No | Serious medical or mental problems? | No |
| Appears to be irrational? | No | Are you receiving treatment? | No |
| Carrying medication? | No | | |

**RETURN TO HOLDING FACILITY COMMENTS:**

**QUESTIONNAIRE REMARKS:**

**LOCKUP KEEPER COMMENTS:**

**EMERGENCY CONTACT**

Name : SINCLAIR, Steven

Res: 1735 E 79th St, #2FL,          Beat:0414
Chicago, IL 60649
773-574-4135

**INTERVIEW LOG**

NO INTERVIEWS LOGGED

**VISITOR LOG**

NO VISITORS LOGGED

Boyle, 09 C 1080
FCRL 0014

Chicago Police Department - ARREST Report

CB #: [ ]

BOYLE, Charles

## ARREST PROCESSING REPORT

**MOVEMENT LOG**

MOVEMENT LOG INFORMATION NOT AVAILABLE

**WC COMMENTS**

Watch Commander Comments:

REL w/o CHARGING

DOES NOT APPLY TO THIS ARREST

**PROCESSING PERSONNEL**

ARRESTEE PROCESSING PERSONNEL:

Beat

| | | |
|---|---|---|
| Searched By: | #4299 | DRIVER, F T (PC0E418) |
| Lockup Keeper: | #9865 | LAMAR, W L (PC0L482) |
| Assisting Arresting Officer: | #1012 | MOORE, C |
| Assisting Arresting Officer: | #1028 | TORRES, L |
| Fingerprinted By: | #9865 | LAMAR, W L (PC0L482) |

APPROVAL PERSONNEL:

Beat

| | | | |
|---|---|---|---|
| Final Approval of Charges : | #55 | FLUDER, J A(PC02957) | 18 OCT 2008 11:04 |

Boyle, 09 C 1080
FCRL 0015



| CPD | NAME (LAST - FIRST - M.I.) BOYLE, CHARLES D | | DATE OF BIRTH 19870507 | C.B. NO. 017392877 | DATE PRINTED 20081018 |
| Arrested BY (STAR NO.) 30468 | DET. FACILITY 002M | AGENCY ILCPD0000 | SEX M | RACE B | I.R. NO. 001958082 |

LEFT WRITERS PALM

LEFT UPPER PALM

LEFT LOWER PALM

LEFT THUMB

Boyle, 09 C 1080
FCRL 0016



| CPD | NAME (LAST - FIRST - M.I.) BOYLE, CHARLES D | | DATE OF BIRTH 19870507 | C.B. NO. 017392877 | CONTROL NUMBER |
|---|---|---|---|---|---|
| Arrested BY (STAR NO.) 30468 | DET. FACILITY 002M | AGENCY ILCPD0000 | SEX M | RACE B | HST0104017392877 |
| | | | | I.R. NO. 001958082 | |

RIGHT WRITERS PALM

RIGHT UPPER PALM

RIGHT LOWER PALM

RIGHT THUMB

**Boyla, 09 C 1080**
**FCRL 0017**



| **CPD** | LAST NAME | FIRST NAME | MIDDLE NAME | SEX | RACE | DOB | CB # |
|---|---|---|---|---|---|---|---|
| | BOYLE, CHARLES D | | | M | B | 19870507 | 017392877 |

| ARRESTING AGENCY (ORI) | DET. FACILITY | IR # |
|---|---|---|
| ILCPD0000 | 002M | 001958082 |

RIGHT WRITERS PALM

RIGHT UPPER PALM

LEFT WRITERS PALM

LEFT UPPER PALM

Boyle, 09 C 1080
FCRL 0018



| NAME (LAST-FIRST-M.I.) BOYLE, CHARLES D | DATE OF BIRTH 19870507 | C.B. NO. 017392877 | CONTROL NUMBER PRINTED FROM ARCHIVE |
|---|---|---|---|
| ADDRESS 6733 S CHAPPEL AVE | SEX M RACE B | I.R. NO. 001958082 | HST0104017392877 |

REASON PRINTED (APPLICATION TYPE OR ARREST CHARGE) 720 ILCS 5.0/31-1-A
ARRESTED BY (STAR NO.) 19135
DET. FACILITY 002M

| DATE/TIME PRINTED 20081018 075824 | PRINTED BY (PRINT NAME) | STAR/EMPLOYEE NO. 30468 | SOCIAL SECURITY NO. 335784561 | AGENCY ILCPD0000 |

1. RIGHT THUMB   2. RIGHT INDEX   3. RIGHT MIDDLE   4. RIGHT RING   5. RIGHT LITTLE

6. LEFT THUMB   7. LEFT INDEX   8. LEFT MIDDLE   9. LEFT RING   10. LEFT LITTLE

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | LEFT THUMB | RIGHT THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

THIS DATA MAY BE COMPUTERIZED IN LOCAL, STATE AND NATIONAL FILES

CPD-31,813 (REV. 8/98)

FINGERPRINT CARD/CHICAGO POLICE DEPARTMENT