IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 09 C 1080 |
| | ) | |
| v. | ) | JUDGE BUCKLO |
| | ) | |
| UNIVERSITY OF CHICAGO, *et al*. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT
OF ADDITIONAL MATERIAL FACTS IN SUPPORT HIS
OF RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, CHARLES BOYLE, by and through his attorneys, ED FOX & ASSOCIATES, and hereby submits his Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts[1] in Support of his Response in Opposition to the City of Chicago Defendants' Motion for Summary Judgment:

1. At some point after 2:00 a.m. on October 18, 2008, Charles Boyle, Kenneth Roberson, Steven Sinclair and Ashley Glover left a bar on the north side of Chicago named Ole Lounge and headed to 53rd Street and Blackstone to use a Bank of America ATM. (Ex. A, pp. 34-37; Ex. B, p. 49). Sinclair was driving, Glover was sitting in the front passenger seat, and Roberson and Boyle were sitting in the back seats of the car. (Ex. A, p. 38-39; Ex. B., p. 45; Ex.

---

[1] The following exhibits are attached hereto and referenced in this Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts

| | | | | |
|---|---|---|---|---|
| Ex. A | Deposition of Charles Boyle | | Ex. F | Deposition of Vincent Darling |
| Ex. B | Deposition of Ashley Glover | | Ex. G. | Deposition of Carl Martin |
| Ex. C | Deposition of Kenneth Roberson | | Ex. H | Deposition of Oscar Galarza |
| Ex. D | Deposition of Clarence Moore | | Ex. I | Deposition of Arthur Gillespie |
| Ex. E | Deposition of Larry Torres | | Ex. J | Deposition of Michael Kwiatkowski |
| | | | Ex. K | Transcript of Criminal Court Hearing on January 20, 2009 |

C., p. 28).

2. About one to two blocks from the ATM, the horn in Glover's car went off. (Ex. A, p. 38). The horn was a constant sound, uninterrupted like a long horn blaring. (Id.). The horn stopped as Sinclair pulled in to park the car and put the car in park. (Ex. B., p. 51; Ex. C p. 29). The horn was blaring for a period of time in-between 20 seconds to one minute. (Ex. B, p. 51; Ex. C, p. 29).

3. Sinclair parked in a parking spot located on 53rd Street. (Ex. A, p. 44). Boyle and Glover did not feel the car hit the curb when it parked. (Ex. A, p. 44). After Sinclair parked, Sinclair and Roberson got out of the car and walked about half a block to go to the ATM. (Ex. A, pp. 45,50). Boyle got out of the car to look under the hood to see what was wrong with the horn. (Ex. A, pp. 45, 51-52). Glover remained seated in the front seat of her car. (Ex. B., pp. 56-58)

4. Moore and Torres got in their patrol car and traveled down 53rd to investigate the car. (Ex. D, p. 38). Torres has no other reason to believe the car was stolen except the fact that the horn was going off. (Ex. E., p.36). Torres saw two people leaving Glover's car and thought that these two people leaving the car were suspicious but did not follow them. (Ex. E., pp. 38-40). Boyle was already out of the car when the officers parked. (Ex. E, 46). Moore considered Boyle the biggest threat out of the four individuals inside the car. (Ex. D., p. 125).

5. Officers Moore and Torres drove up and parked in front of Glover's car less than one minute after Sinclair, Roberson and Boyle got out of the car. (Ex. B, p. 56). As Boyle was looking under the hood of Glover's car, one of the officers told Boyle to "put [his] fucking hands up". (Ex. A, p. 52). Boyle put his hands up in response to this command. (Id.). At that point, Boyle had his back to Moore and Torres and was facing the engine of the car. (Ex. A, p. 53). Officer Moore and Torres were standing approximately one and a half to two feet away from

2

Boyle. (Ex. A, p. 54).

6. Officer Moore asked Boyle "whose car is this"? (Ex. A, p. 54). In response Boyle pointed to Glover, who was sitting in the car, and said "it's hers". (Id.). Glover put her hand out of the passenger window and said to the officers "it's my car." (Ex. B, p. 69; Ex. A, p. 54). Boyle then turned to look back at the engine of the car. (Ex. A, p. 55).

7. After Boyle pointed to Glover and turned back to look at the engine of the car, an officer said to Boyle "show me some damn ID." (Ex. A, p. 59). Boyle asked this officer why. (Ex. A, p. 59). Boyle then turned around to face the officer who asked him for ID. (Ex. A, p. 60). The officer then told Boyle to "show me some fucking ID". (Ex. A, p. 62). Boyle then stated to the officer that he didn't have a problem with authority, but simply was asking why. (Ex. A, p. 62). Boyle then heard Moore state "I see we're going to have to deal with you." (Ex. A, p. 63).

8. Officer Moore grabbed Boyle, turned him around, and slammed him onto his squad car parked directly in front of Glover's car. (Ex. A, p. 63; Ex. B., p. 66). Moore admits to touching Boyle to guide him towards the patrol car. (Ex. D, p. 51). Moore then grabbed Boyle by the collar and asked again for Boyle's ID. (Ex. A, p. 64). Boyle again asked "why" and Moore stated "because I said so." (Ex. A, p. 64). As Moore slammed Boyle into the car, Torres punched Boyle in the back and hit him in the stomach with a flashlight. (Ex. A, pp. 67,75). Boyle then felt Torres starting to pull his pants down. (Ex. A, p. 75). Boyle heard Moore say "we're going to get your ass." (Ex. A, p. 70).

9. Boyle went down to the ground as Moore and Torres kicked and hit Boyle. Boyle said to the officers "I'm not doing anything, please stop hitting me" while the officers continued to strike Boyle and said "shut the fuck up." (Ex. A, pp. 71-72). When Boyle was on his knees and on the ground, Glover saw the Moore and Torres's legs moving and kicking Boyle. (Ex. B.,

p. 109). Boyle stated "I'm not resisting. Please stop kicking me." (Ex. B., p. 109). Moore and Torres kicked Boyle for several minutes. (Ex. B., p. 110).

10. City officers Darling and Martin were driving in a patrol car when they heard a dispatch over their radio requesting assistance. (Ex. F., pp. 15-16). Officer Martin drove the squad car over to 53rd Street. (Ex. G, p. 12).

11. Moore and Torres were repeatedly kicking Boyle on the ground as two City squad cars pulled up on the scene. (Ex. B, pp. 118,152; Ex. C, p. 47). Boyle was handcuffed at this point. (Ex. C, 47).

12. After two to three minutes three to four more squad cars, including two city squad cars, arrived at the scene. (Ex. B., p. 118). Newly arrived University officers ran out of their squad cars and immediately proceeded to run over to and kick Boyle for about one to two minutes. (Ex. B., pp. 116,120,121). University officers kicked and punched Boyle all over his body, including his neck and chest area, more than 20 times. (Ex. A, pp. 78-79).

13. In total, Boyle was kicked and punched for approximately 5-10 minutes. (Ex. B, p. 121).

14. When Darling and Martin arrived at the scene, there was a lot of chaos so they sat back and watched for a moment. (Ex. F, p. 17). Darling and Martin saw Boyle in handcuffs. (Ex. G, p. 15).

15. City officers got out of their car when they arrived, but just stood next to their car as University officers Moore, Torres, Galarza, Gillespie and Kwiatkowski kicked Boyle. (Ex. B, p. 118). Darling and Martin just stood next to their car, two to three car lengths away from the scene. (Id.). City officers watched the University officers kick and beat Boyle for about 2-5 minutes. (Ex. B., pp. 116,120,121; Ex. C, p. 83).

16. Torres claims that during the altercation with Boyle he had the wind knocked out

4

of him for a couple of seconds and when the assisting officers came he let go of Boyle because he was tired. (Ex. E, p. 64). Torres was winded and leaned over, so he did not see how Officer Moore and the assisting University officers tried to get Boyle down to the ground. (Ex. E, p. 67). Torres also did not see any officers place handcuffs on Boyle. (Ex. E, p. 70). Before Boyle was in handcuffs but after Torres was leaning over, Torres saw additional University and City officers on the scene. (Ex. E, p. 73).

17. There were up to four City officers at the scene, and two City squad cars. (Ex. B, p. 154; Ex. C, pp. 82-83). The other two City officers at the scene were Officer Jones and Sgt. Witczak. (Ex. G., pp. 12-13).

18. Glover did not see Boyle wrestling with any officers, nor did she see Boyle pick up any of the officers. (Ex. B, p. 115).

19. Roberson was in the ATM located less than one block down until he saw flashing lights outside the window. (Ex. C, p. 43). He walked to Glover's car where he saw four to five University officers kicking and stomping Boyle. (Ex. C, p. 45). Roberson asked the officers what they were doing, and one of the officers asked Roberson if he wanted to be next. (Ex. C, p. 45). Roberson heard Boyle state, "I'm already in handcuffs, why are you kicking and stomping me?" when Boyle on the ground in handcuffs. (Ex. C, pp. 46-47).

20. Galarza, Gillespie, and Kwiatkowski first saw City officers on the scene after Boyle was placed in handcuffs. (Ex. H, p. 52;Ex. I., p. 48; Ex. J, p. 43).

21. The kicking was constant at first, but slowed as more officers arrived at the scene. (Ex. C, p. 46). The University officers continued to kick as witnesses arrived. (Ex. C., p. 61). Officer Torres and Officer Moore did most of the kicking. (Ex. C, p. 51). Roberson saw Boyle's head kicked downwards to the ground. (Ex. C, p. 52). Roberson heard an officer state, "you're lucky this wasn't ten years ago because I would have killed you, you made me break my

5

glasses." (Ex. C, p. 51). Roberson saw Boyle's pants half-way down when he was lifted up after getting kicked. (Ex. C, p. 58).

22. As the City officers moved towards the scene of the incident, the University officers were towards giving their final blows to Boyle on the ground. (Ex. C, p. 83)

23. Boyle was on the ground in handcuffs when University officers picked him up, and when he faced the street he saw City officers. (Ex. A., p. 85; Ex. B, p. 126). An unknown City officer said to Boyle, "what are you doing and why are you causing trouble?" (Ex. A, p. 85).

24. After lifting Boyle up, Officer Moore slammed Boyle against the trunk of a squad car. (Ex. A, p. 87). Darling and Martin, who were still standing next to their squad car, then saw Torres, Moore, and Galarza walk Boyle over to their City patrol car and place Boyle into the back seat. (Ex. A, p. 115-116; Ex. F, p. 18).

25. Boyle appeared dishelved, sweaty and annoyed to Officer Martin. (Ex. F, p. 16).

26. Darling and Martin took Boyle down to the 21st District Police Station for processing. (Ex. F, p. 21). Moore and Torres followed Darling, Martin and Boyle to the 21st district station. (Ex. F, p. 29).

27. Moore told Darling in the 21st District Station that he had made a stop on Boyle because the hood on his car was up. (Ex. F, p. 31). Moore also told Darling that he and Boyle got into a verbal altercation, and that Moore took Boyle down to the ground. (Ex. F, p. 31). Torres told Darling that he assisted Moore in calming Boyle down and placed Boyle in custody. (Ex. F, p. 31)

28. Darling asked Moore and Torres if they were ready to sign criminal complaints against Boyle. (Ex. F, 32). Martin wrote out the complaints. (Ex. G, 22).

29. Based on information received from Moore and Torres, Darling and Martin

6

charged Boyle with resisting arrest. (Ex. F, p. 32). Martin wrote out the information that was originally contained on the criminal complaint forms and signed the complaints. (Ex. E, p. 105). Moore and Torres signed criminal complaints against Boyle. (Ex. F, p. 32). Boyle was not charged with battery, despite the fact that Moore told Darling that Boyle hit him a couple times. (Id.).

30. On January 20, 2009, the charge of resisting or obstructing a peace officer against Boyle was dismissed as *nolle pros*. (Ex. J, p. 89). Officers Moore and Torres swore to a new version of the criminal complaint against the Plaintiff on that date. (Ex. K, p. 28). The criminal complaint against Boyle was amended several times pursuant to a motion to dismiss immediately prior to a motion to suppress hearing on that date. (Ex. J, pp. 15-28).

31. In the criminal complaint that that Officer Martin swore to on October 18, 2008, Boyle is described as "resist[ing] an investigatory stop by failing to produce ID and bec[oming] combative." (Ex. D, pp. 102-103).

32. On the last version of the criminal complaint against Boyle, that Officers Moore and Torres swore to on January 20, 2009, "becoming combative" is scratched out. This charge states that Boyle "resisted an investigatory stop of a possible stolen car by making physical contact and flailing his arms." (Ex. K, pp. 25-28; Ex. D. pp. 102-103, Ex. No. 11.)

33. Torres did not include the fact that he thought the vehicle was stolen in his police report. (Ex. E, pp. 97-98,105-110, Ex. 2).

34. Moore told Darling and Martin at the 21st District Station about his initial interaction with the grey Chrysler and Boyle which included the horn constantly sounding, two people getting out of the car, Boyle's refusal to provide information, Boyle pushing off of the University officers and cuffing Boyle. (Ex.. D, p. 89).

7

Respectfully submitted,

s/<u>Jonathan R. Ksiazek</u>
Jonathan R. Ksiazek
ED FOX & ASSOCIATES
300 West Adams, Suite 330
Chicago, Illinois 60606
(312) 345-8877
jksiazek@efox-law.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 09 C 1080 |
| | ) | |
| v. | ) | JUDGE BUCKLO |
| | ) | |
| UNIVERSITY OF CHICAGO, *et al*. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING**

To: Steven Puiszis       Helen C. Gibbons
    Hinshaw & Culbertson    Assistant Corporation Counsel
    222 North LaSalle Street   30 N. LaSalle Street, Suite 1400
    Suite 300           Chicago, IL 60602
    Chicago, IL 60601

PLEASE TAKE NOTICE that on May 6, 2010, the undersigned filed with the Clerk of this Court**, PLAINTIFF'S LOCAL RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,** service of which is being made upon you.

                    s/Jonathan R. Ksiazek
                    Jonathan R. Ksiazek
                    ED FOX & ASSOCIATES
                    300 West Adams, Suite 330
                    Chicago, IL 60606
                    (312) 345-8877

**PROOF OF SERVICE**

I, Jonathan R. Ksiazek, an attorney, under penalty of perjury, and state that on May 6, 2010, service is being made in accordance with the General Order on Electronic Case Filing section XI.

                    s/Jonathan R. Ksiazek
                    Jonathan R. Ksiazek

9