**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 09 C 1080 |
| | ) | |
| v. | ) | JUDGE BUCKLO |
| | ) | |
| UNIVERSITY OF CHICAGO, *et al*. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO THE UNIVERSITY OF CHICAGO**
**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

NOW COMES the Plaintiff, CHARLES BOYLE, by and through his attorneys, ED FOX & ASSOCIATES, and hereby submits his Response to the University of Chicago Defendants' Local Rule 56.1 Statement of Undisputed Facts:

**I. Parties, Jurisdiction And Venue**

1.      This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §1331 (Ex. A, 11), and venue is proper under 28 U.S.C. §1391 (Ex. A, ¶2).

**ANSWER:**   This paragraph is undisputed.

2.      Charles Boyle, is a resident and citizen of the State of Illinois (Ex. A, ¶1).

**ANSWER:**   This paragraph is undisputed.

3.      The University of Chicago is a private educational institution (Ex. A, ¶9).

**ANSWER:**   This paragraph is undisputed.

4.      Defendants Larry Torres, Clarence E. Moore, Oscar Galarza, Michael Kwiatowski and Arthur Gillespie were employees of the University of Chicago on the date of this incident, October 18, 2008 (Ex. A, r4-8).

**ANSWER:**   This paragraph is undisputed.

5.     Larry Tones is 40 years old and began his employment with the University in January, 2007 (Ex. G, p. 15), and Oscar Galarza began with the University in June or July of 2007 (Ex. F, p.8). On the date of the incident, Arthur Gillespie had been employed by the University for a little over seven months (Ex. D, p. 8). Michael Kwiatowski had been employed for approximately six and one-half years (Ex. E, p. 7). It was Clarence Moore's first day with the University (Ex. C, p. 9), although he had worked for 24 years as a Chicago Police officer, his last assignment being in the Traffic Safety Unit (Ex. C, p. 11-12); he is 56 years old (Ex. C, p. 8).

**ANSWER:**   This paragraph is undisputed.

6.     Charles Boyle is 22 years old, he was an All Conference football player in high school and claims to have played football for a short period at the University of Illinois (Ex. B, pp. 8-9); he stands 5' 11 3/4″ tall and weighed about 235 pounds on the date of the incident (Ex. B, p. 9); plaintiff estimates that at one time could bench press approximately 345 pounds (Id. at 10) and could leg press approximately 700 pounds (Id. at p. 11); Ashley Glover described Charles Boyle as a big strong guy, who is pretty well built, who has a lot of big muscles in his chest, shoulders and arms (Ex. H, p. 76).

**ANSWER:**   This paragraph is undisputed.

7.     Plaintiff also uses the name Charles Cain (Ex. B, p. 2; Ex. H, p. 12); and he "raps" under the name of Charles Cain or Apollo Cain (Ex. H, p. 15).

**ANSWER:**   Plaintiff objects: The alleged facts are irrelevant to the material issues of the case.  Plaintiff's "rap" name makes no fact regarding the events of October 18, 2008 more or less probable.  Thus, Plaintiff moves to strike paragraph 7.  However, without waiving said objection, Plaintiff does not dispute that the facts stated as alleged in paragraph 7.

## II. Background Information

8.      On October 18, 2008, Larry Torres and Clarence Moore were working together for the first time (Ex. G, p. 48); this was a "training" day for Clarence Moore (Ex. C, p. 15). Both of them were wearing uniforms indicating they were University police and the vehicle they drove indicated they were University of Chicago police (Ex. C, pp. 55-56; Ex. G, p.19-20,49). The uniforms the University officers wore at that time resembled those worn by the Chicago police (Ex. G, p. 127).

**ANSWER:**   This paragraph is undisputed.

9.      At approximately 2:30 a.m. that morning, Torres and Moore stopped for coffee at a Dunkin' Donuts located at 1435 East 53rd Street in Hyde Park (Ex. G, p. 24); as they were leaving the Dunkin' Donuts, they heard a loud car horn constantly blaring and then they saw the car drive past them (Ex. G, pp. 25-26). The car was a silver colored Chrysler (Ex. G, p. 33; Ex. C, p. 33).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 9.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because Officers Torres and Moore present conflicting testimony as to whether or not they were outside of the Dunkin Donuts when they heard the car horn.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 9 in part.  Plaintiff does not dispute that Torres and Moore stopped for coffee at Dunkin' Donuts, or that they heard a loud car horn constantly blaring and saw a silver colored Chrysler driver past them.  Plaintiff disputes all other facts contained in paragraph 9.  Moore testified that he was outside the doors of the Dunkin' Donuts when he heard the horn go off (Ex. C, p. 29), while Torres testified that he heard the horn while he was inside the doorway of the Dunkin' Donuts and both doors were closed when he heard the horn (Ex. G, pp. 25-26).

10.      Torres and Moore observed the silver Chrysler travel eastbound a short distance past them and then saw it swerve into the parking lane and make contact with the curb (Ex. C, pp. 27-28; Ex. G, pp. 34-35); the silver Chrysler was the only car traveling on 53rd Street at that time of the morning and its horn stopped blaring at some point after the vehicle made contact with the curb and stopped (Ex. C, p. 30).

**ANSWER:**    Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 10.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because there is conflicting testimony about whether the Chrysler swerved into the parking lane and made contact with the curb, and when the horn to the car went off.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 10 in part.  Plaintiff does not dispute that Torres and Moore observed the silver Chrysler travel eastbound a short distance past them.  Plaintiff disputes all other facts contained in paragraph 10. Officer Moore testified that the grey Chrysler "kind of drifted into the curb" (Ex. C, p. 34), while Officer Torres testified that the car "pulled over abruptly and hit the curb with the tires" (Ex. G, p. 27).  Further, both Ashley Glover and Charles Boyle – who were inside the vehicle – did not see or feel the car hit the curb.  (*See* Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts ("Pl Fact"), ¶3).

11.      On October 18, 2008, Ashley Glover and her mother owned the 2006 gray Chrysler Sebring (Ex. H, pp. 7-8); on the date of the incident, the grey Chrysler Sebring that Ashley Glover owned had an electrical shortage which would cause the vehicle's horn to blow for no reason (Ex. H, p. 29); the horn would randomly go off and would continuously blare anywhere from five seconds to a minute (Ex. H, p. 30); the length of time the horn sounded varied, the time of day varied and in most instances, when the car was turned off, the horn would stop (Ex. H, p. 31).

**ANSWER:**   This paragraph is undisputed.

12.   Ashley Glover, her former boyfriend, Steven Sinclair (Ex. H, p. 8) and two friends, Kenneth Roberson, and the plaintiff, Charles Boyle, met at the plaintiff's apartment the night before and went to a bar on the north side of Chicago called the Ole Lounge (Ex. B, pp. 27-29) for several hours there that evening (Ex. 1, p. 22).

**ANSWER:**   This paragraph is undisputed.

13.   The four of them, Glover, Sinclair, Roberson and Boyle went to the Ole Lounge in Ashley Glover's grey Chrysler Sebring (Ex. H, pp. 22, 27, 40; Ex. B, p. 25; Ex. I, pp. 19, 22); the four of them (Glover, Sinclair, Roberson and the plaintiff) were returning from Ole Lounge when the incident occurred (Ex. H, pp. 19, 29). Steven Sinclair was driving the vehicle when the horn began to blare (Ex. B, p. 39).

**ANSWER:**   This paragraph is undisputed.

14.   On October 18, 2008, Ashley Glover's 2006 grey Chrysler Sebring also had an alarm which would cause the horn to go off when the alarm was activated (Ex. H, p. 31); Glover acknowledged that if a person didn't know her vehicle had an electrical short and heard the horn go off, they might conclude that the car's alarm was going off (Ex. H, p. 32).

**ANSWER:**   Plaintiff objects: The alleged facts are irrelevant to the material issues of the case and speculative.  Thus, Plaintiff moves to strike paragraph 14.  Glover's belief about what some unknown person who heard her horn might conclude is irrelevant as the only beliefs at issue in this case as those of Officers Moore and Torres, who actually did hear the car horn go off.  Further, the testimony is speculative as Glover is being asked to provide the thoughts and conclusions of an unknown person in a vague, hypothetical situation.

However, without waiving said objection, Plaintiff does not dispute the facts alleged in

paragraph 14.

15.    A person who heard the horn of Ashley Glover's vehicle constantly blare when it went off, who did not know the vehicle had an electrical short, could conclude that the alarm was going off and that the vehicle had been stolen (Ex. H, p. 31).

**ANSWER:**    Plaintiff objects: The alleged facts are irrelevant to the material issues of the case and speculative.  Thus, Plaintiff moves to strike paragraph 15.  Glover's belief about what some unknown person who heard her horn might conclude is irrelevant as the only beliefs at issue in this case as those of Officers Moore and Torres, who actually did hear the car horn go off.  Further, the testimony is speculative as Glover is being asked to provide the thoughts and conclusions of an unknown person in a vague, hypothetical situation.

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 15.

16.    The vehicle's horn went off and began to blare right after they turned onto 53rd Street and continued to blare until after they stopped driving (Ex. H, p. 45; Ex. I, p. 29); Glover estimated the car had traveled approximately three blocks with the horn blaring (Ex. I, pp. 51-52).

**ANSWER:**    Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 16.  *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because there is conflicting testimony regarding when the horn went off and how long the horn blared.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 16 in part.  Plaintiff does not dispute that the vehicle's horn went off and began to blare right after it turned onto 53rd Street.  Plaintiff disputes all other facts contained in paragraph 16.  Glover testified that the horn stopped as they pulled in to park (Ex. H, pp. 45,51), while Boyle

testified that the horn stopped at some point when the vehicle turned onto 53rd Street (Ex. B, p. 42). Boyle testified that they traveled about a block down 53rd street before parking and pulling over on the street so Sinclair and Roberson could use the ATM. (Ex B, p. 44). Glover testified that the horn went off for about 20 seconds, while Roberson testified that the horn went off starting a little bit in front of the Dunkin' Donuts on 53rd Street. (Ex. I, p. 28). Further, Moore testified that he had to travel "a matter of feet" as opposed to blocks when traveling to investigate the vehicle. (Ex. C, p. 38).

17. As Ashley Glover's vehicle was traveling down 53rd Street past a Dunkin' Donuts with the horn blaring, Steven Sinclair who was driving the car, made a remark "your stupid horn, and there's a cop right there" or something to that effect (Ex. H, p. 62).

**ANSWER:** This paragraph is undisputed.

18. Kenneth Robertson who was a passenger in the front seat of Glover's grey Chrysler Sebring, recalled that Steven Sinclair, who was driving Ashley's car, would typically drive a car up onto the curb and then come down off the curb when parking the car, and Roberson recalled that when Sinclair did so on the morning of October 18, 2008, that the car gently shook when the vehicle hit he curb (Ex. I, p. 85; Ex. C, p. 32).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 18. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony does not support the facts in paragraph 18.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 16. Roberson stated that Sinclair "gently" touched the curb with the car on October 18, 2008 and the car shook "gently" when it hit the curb. (Ex. I, p. 85). Roberson did not state that Sinclair drove up onto the curb on October 18, 2008 and then came back down off of the curb, just that he has done that previously. (Id.). Further, both Ashley Glover and Charles Boyle – who were inside the vehicle – did not see or feel the car hit the curb. (*See* Pl Fact, ¶3).

19.     Steven Sinclair who was driving Ashley Glover's car, did not stop the car in relation to a signal by any police officer to pull the vehicle over (Ex. B, p45; Ex. H, p. 63).

**ANSWER:**   This paragraph is undisputed.

20.     After the vehicle hit the curb, Torres and Moore observed two people quickly exit the silver Chrysler and walk eastbound away from the car and out of their eyesight (Ex. G pp. 38-40; Ex. C, p. 40, 124-25); they saw that there were still two people in or near the Chrysler (Ex. G p. 41, Ex. C. p. 41); a female in the front passenger seat and Charles Boyle, who also got out of the car a couple of seconds after the first two individuals (Ex. G, pp. 45-46; Ex. C, p. 44-45).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 20.  *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because there is a disputed issue of fact whether the car actually hit the curb.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 20 in part.  Plaintiff disputes that the vehicle hit the curb as stated in paragraph 20.  Both Ashley Glover and Charles Boyle – who were inside the vehicle – did not see or feel the car hit the curb. (*See* Pl Fact, ¶3).

### III. Torres And Moore Approach The Vehicle

21.     The plaintiff went to the front of the silver Chrysler and opened the hood (Ex. p. 46; Ex. H, p. 57; Ex. C, p.45); Torres and Moore then approached him and asked "whose car is this?" and also asked the plaintiff for identification (Ex. G, pp. 47-48; Ex. C, p.48, 51); Boyle turned around and faced Tones and Moore (Ex. C, p. 48).

**ANSWER:**   This paragraph is undisputed.

22.     Ashley Glover recalled that the plaintiff never produced his identification for

Moore and Torres, despite them asking to see it three times (Ex. H, pp. 64, 71, 73).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 22. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the Defendant omits the context of these actions.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 22. Officer Moore asked Boyle "whose car is this"? (Ex. B, p. 54; Ex. H p. 68). In response Boyle pointed to Glover, who was sitting in the car, and said "it's hers". (Id.). Glover put her hand out of the passenger window and said to the officers "it's my car." (Ex. H, p. 69; Ex. B, p. 54). Boyle then turned to look back at the engine of the car. (Ex. B, p. 55). After Boyle pointed to Glover and turned back to look at the engine of the car, an officer said to Boyle "show me some damn ID." (Ex. B, p. 59; Ex. H p. 70). Boyle asked this officer why. (Id.). Boyle then turned around to face the officer who asked him for ID. (Ex. B, p. 60). The officer then told Boyle words to the effect of "show me some f[uck]ing ID". (Ex. B, p. 62; Ex. H, p. 71). Boyle then stated to the officer that he didn't have a problem with authority, but simply was asking why. (Ex. B, p. 62). Boyle then heard Moore state "I see we're going to have to deal with you." (Ex. B, p. 63). Officer Moore grabbed Boyle, turned him around, and slammed him onto his squad car parked directly in front of Glover's car. (Ex. B, p. 63; Ex. H., p. 66). Moore then grabbed Boyle by the collar and asked again for Boyle's ID. (Ex. B, p. 64). Boyle again asked "why" and Moore stated "because I said so." (Ex. B, p. 64). The Plaintiff never refused to produce ID at any point in time.

23. Plaintiff assumed that Torres and Moore were police officers when he was asked to procure some identification after he turned around to look at him (Ex. B, p. 60).

**ANSWER:** This paragraph is undisputed.

24. Plaintiff admitted he did not produce his identification because he wanted to know why Torres and Moore wanted to see his identification (Ex. B, pp. 60-62).

**ANSWER:** This paragraph is undisputed.

25. Ashley Glover did not believe there was anything improper about the University officers asking plaintiff for identification not knowing if the car was stolen or not (Ex. H, p. 65) and she believed those were reasonable questions to ask after the vehicle's horn had gone off at 2:30 in the morning and not knowing if the car was stolen (Ex. H, p. 64).

**ANSWER:** Plaintiff objects: The alleged facts are irrelevant to the material issues of the case and speculative. Thus, Plaintiff moves to strike paragraph 25. Glover's beliefs about the University officers' actions on October 18, 2008 make no fact in this case more or less probable.

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 25.

26. It was not Officer Moore or Torres' intent to have the plaintiff arrested when they approached him on the street at 2:30 a.m. (Ex. C, p.125; Ex. G, p.135).

**ANSWER:** Plaintiff objects: The alleged facts are irrelevant to the material issues of the case. Thus, Plaintiff moves to strike paragraph 26. Officer Moore and Torres intent on October 18, 2008 make no fact more or less probable as their actions on that date are what is at issue.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 26. The facts show that Officers Moore and Torres beat, detained and arrested the Plaintiff on October 18, 2008. (See Pl Facts, ¶¶5-24).

27. Torres and Moore were attempting to determine if the car was stolen or if

someone in the car needed assistance (Ex. G, p. 41, 136).

     **ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 27. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because Plaintiff's incident report does not reflect a stolen vehicle or assistance.

     However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 27. At no point in the incident report does Officer Torres state that he was investigating a possible stolen vehicle or seeing if an individual needed assistance. (Ex. G., pp. 105-110, Ex. 3)., Further, Officers Moore or Torres's signed original criminal complaints against Boyle do not state that the Officers were investigating a possible stolen vehicle or seeing if someone required assistance. (Ex. C, pp. 102-105, Ex. 11).

     28.    Torres did not believe they were doing anything improper or violating anyone's rights by approaching the vehicle to investigate what was going on with the vehicle (Ex. p. 135).

     **ANSWER:**   Plaintiff objects: The alleged facts are irrelevant to the material issues of the case. Thus, Plaintiff moves to strike paragraph 28. Officer Moore and Torres beliefs on October 18, 2008 make no fact more or less probable as their actions on that date are what is at issue.

     However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 26. As Plaintiff's Response Brief indicates, Moore and Torres had no reasonable suspicion that a crime was occurring or about to occur. *See* Plaintiff's Response in Opposition to the University of Chicago Defendants' Motion for Summary Judgment, Paragraph IV, A, 1.

     29.    If the car wasn't a stolen vehicle and no one was in need of assistance, Torres and Moore would have simply filled out a "contact card," on Mr. Boyle, and that would have ended their involvement with him and the vehicle (Ex. C3 pp. 136, 56).

**ANSWER:** Plaintiff objects: The alleged facts are irrelevant to the material issues of the case. Thus, Plaintiff moves to strike paragraph 29. Officer Moore and Torres beliefs on October 18, 2008 regarding a hypothetical situation make no fact more or less probable as their actions on that date are what is at issue.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 26. The facts show that Officers Moore and Torres had knew that the vehicle wasn't stolen and that no one was in need of assistance, yet they beat, detained and arrested the Plaintiff on October 18, 2008 anyway. (See Pl Facts, ¶¶5-24).

### IV. Reasonable Suspicion Existed

30.     During Clarence Moore's 24 years on the Chicago Police Department, he was involved in numerous stolen car arrests and recoveries and has driven a stolen vehicle after it was recovered which had its steering column "peeled" (Ex. C, pp. 119-20).

**ANSWER:** Plaintiff objects: The alleged facts are irrelevant to the material issues of the case. Thus, Plaintiff moves to strike paragraph 30. Officer Moores experience with stolen cars prior to October 18, 2008 makes no fact more or less probable in this case as the steering column here did not "peel" and Officer Torres testified that the only reason he investigated the vehicle was because the horn was going off. (Ex. G, p. 36).

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 26.

31.     Clarence Moore also worked in his father's gas station and has repaired stolen vehicles after they were recovered that had steering column peeled and the vehicle's ignition lock broken in order to hot wire and steal the car. (Ex. C, p. 119).

**ANSWER:** Plaintiff objects: The alleged facts are irrelevant to the material issues of

the case.  Thus, Plaintiff moves to strike paragraph 30.  Officer Moores experience with stolen cars prior to October 18, 2008 makes no fact more or less probable in this case as the steering column here did not "peel" and Officer Torres testified that the only reason he investigated the vehicle was because the horn was going off.  (Ex. G, p. 36).

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 31.

32.    Based on that experience, Moore explained that a horn constantly blowing was consistent with a vehicle's alarm system having been shorted out in an attempt to steal the vehicle by hot wiring the car (Ex. C, pp. 116, 117; see also Ex. G, p.133-34).

**ANSWER:**   Plaintiff objects: The alleged facts are irrelevant to the material issues of the case.  Thus, Plaintiff moves to strike paragraph 30.  Officer Moore's experience with stolen cars prior to October 18, 2008 makes no fact more or less probable in this case as at no point in the incident report does Officer Torres state that he was investigating a possible stolen vehicle or seeing if an individual needed assistance.  (Ex. G., pp. 105-110, Ex. 3)., Further, Officers Moore or Torres's signed original criminal complaints against Boyle do not state that the Officers were investigating a possible stolen vehicle.  (Ex. C, pp. 102-105, Ex. 11).

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 26.

33.    Moore also explained that steering a stolen vehicle can be difficult because after a steering column was "peeled," the steering on the vehicle could lockup on the driver (Ex. C, pp. 116, 120).

**ANSWER:**   Plaintiff objects: The alleged facts are irrelevant to the material issues of the case.  Thus, Plaintiff moves to strike paragraph 33.  Officer Moore's experience with stolen

cars prior to October 18, 2008 makes no fact more or less probable in this case as the steering column here did not "peel" and Officer Torres testified that the only reason he investigated the vehicle was because the horn was going off. (Ex. G, p. 36).

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 33.

34. Based on his years of experience as a police officer and as a mechanic, Moore explained that because the vehicle's horn was constantly blaring, because he observed the vehicle suddenly hit the curb at 2:30 a.m. and then several people quickly exit the vehicle and walk away from the car, suggested to him that the grey Chrysler Sebring could have been stolen and that the steering could have possibly locked up on the driver (Ex. C, pp. 116, 120, 127-28; see also Ex. G p. 134-36).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 34. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because Officer Moore saw the car drift into the curb and they officers did not have any information regarding whether the vehicle was stolen.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 34 in part. Officer Moore testified that the grey Chrysler "kind of drifted into the curb" (Ex. C, p. 34). Further, at no point in the incident report does Officer Torres state that he was investigating a possible stolen vehicle or seeing if an individual needed assistance. (Ex. G., pp. 105-110, Ex. 3) and Officers Moore or Torres's signed original criminal complaints against Boyle do not state that the Officers were investigating a possible stolen vehicle. (Ex. C, pp. 102-105, Ex. 11). Officer Torres and Moore never told dispatch that they were investigating a stolen car, and only knew about the horn going off when investigating the car. (Ex. G, pp. 36-37).

35.     Moore was also concerned with whether a person who was in the car was in distress and had been pushing the car's horn or that the occupants of the car were forcing someone to do something (Ex. C, p. 128; see also Ex. p. 135).

**ANSWER:**    Plaintiff objects: The alleged facts are irrelevant to the material issues of the case.  Thus, Plaintiff moves to strike paragraph 35.  Moore's belief about what some unknown person was doing inside of the car is irrelevant because he had no information regarding whether or not a crime was being committed or about to be committed.  Moore never testified that he saw a person in the car in distress or someone forcing another person in the car to do something.

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 35.

### V. Plaintiffs Actions Supply Probable Cause

36.     When Moore and Torres approached the plaintiff, they had on uniforms indicating they were University of Chicago police officers (Ex. p. 49); after the plaintiff refused to produce any identification, Moore asked the plaintiff to step over to their vehicle (Ex. G, p. 49).

**ANSWER:**    Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 36.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the Defendant omits the context of these actions and Plaintiff never refused to produce any identification.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 36.  Officer Moore asked Boyle "whose car is this"?  (Ex. B, p. 54; Ex. H p. 68).   In response Boyle pointed to Glover, who was sitting in the car, and said "it's hers".  (Id.).  Glover put her

hand out of the passenger window and said to the officers "it's my car." (Ex. H, p. 69; Ex. B, p. 54). Boyle then turned to look back at the engine of the car. (Ex. B, p. 55). After Boyle pointed to Glover and turned back to look at the engine of the car, an officer said to Boyle "show me some damn ID." (Ex. B, p. 59; Ex. H p. 70). Boyle asked this officer why. (Id.). Boyle then turned around to face the officer who asked him for ID. (Ex. B, p. 60). The officer then told Boyle words to the effect of "show me some f[uck]ing ID". (Ex. B, p. 62; Ex. H, p. 71). Boyle then stated to the officer that he didn't have a problem with authority, but simply was asking why. (Ex. B, p. 62). Boyle then heard Moore state "I see we're going to have to deal with you." (Ex. B, p. 63). Officer Moore grabbed Boyle, turned him around, and slammed him onto his squad car parked directly in front of Glover's car. (Ex. B, p. 63; Ex. H., p. 66). Moore then grabbed Boyle by the collar and asked again for Boyle's ID. (Ex. B, p. 64). Boyle again asked "why" and Moore stated "because I said so." (Ex. B, p. 64). The Plaintiff never refused to produce ID at any point in time.

37.    As Moore went to guide plaintiff in the direction of the University vehicle, the plaintiff pushed Moore's arm away (Ex. C, p. 51-53); when that occurred Torres grabbed plaintiff's arm and told him to relax (Ex. G p. 54).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 37. *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony does not reflect that Defendants' version of events.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 37. After Boyle pointed to Glover and turned back to look at the engine of the car, an officer said to Boyle "show me some damn ID." (Ex. B, p. 59; Ex. H p. 70). Boyle asked this officer

why.  (Id.).  Boyle then turned around to face the officer who asked him for ID.  (Ex. B, p. 60).

The officer then told Boyle words to the effect of "show me some f[uck]ing ID".  (Ex. B, p. 62;

Ex. H, p. 71).   Boyle then stated to the officer that he didn't have a problem with authority, but

simply was asking why.  (Ex. B, p. 62).  Boyle then heard Moore state "I see we're going to have

to deal with you."  (Ex. B, p. 63).

Officer Moore grabbed Boyle, turned him around, and slammed him onto his squad car

parked directly in front of Glover's car.  (Ex. B, p. 63; Ex. H., p. 66).  Moore then grabbed Boyle

by the collar and asked again for Boyle's ID.  (Ex. B, p. 64).  Boyle again asked "why" and

Moore stated "because I said so."  (Ex. B, p. 64).  As Moore slammed Boyle into the car, Torres

punched Boyle in the back and hit him in the stomach with a flashlight.  (Ex. B, pp. 67,75).

Boyle then felt Torres starting to pull his pants down.  (Ex. B, p. 75).  Boyle heard Moore say

"we're going to get your ass."  (Ex. B, p. 70).

38.     After Torres grabbed plaintiff's arm and told him to relax, plaintiff pulled his arm

away from Torres (Ex. GS p. 55). Moore then grabbed plaintiff's other arm and plaintiff pulled

his arm away from Moore (Ex. Cas p. 56), Moore and Torres told plaintiff to stop resisting (Id.).

They were trying to get some control of the plaintiff (Ex. C, p.55), but found they were

essentially wrestling with him (Ex. Cx p. 56). Officer Moore suffered a sprained wrist during the

incident (Ex. C, p. 87).

**ANSWER:**   Plaintiff objects:  Defendant has mischaracterized the evidence in the

record.  Plaintiff moves to strike paragraph 38.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D.

Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or

mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by

the cited evidence.)  The record is mischaracterized because the testimony does not reflect that

Defendants' version of events.  However, without waiving said objection, Plaintiff disputes the

facts alleged in paragraph 38.  See Plaintiff's answer to #37 above.

39.     When plaintiff pushed Officer Moore's arm away he committed a battery on Moore (Ex. A, p. 57).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 39.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony does not reflect that Defendants' version of events.  See Plaintiff's answer to #37 above.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 39.   Plaintiff was never charged with a battery.  (Pl Fact, ¶18).

40.     At one point while Moore and Torres were wrestling with plaintiff, the plaintiff put Officer Torres in a bear hug, lifted him up and pushed him into the University car hard enough to knock the wind out Torres for several seconds (Ex. G, pp. 59-60, 63).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 40.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony does not reflect that Defendants' version of events.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 40.  Boyle went down to the ground as Moore and Torres kicked and hit Boyle.  Boyle said to the officers "I'm not doing anything, please stop hitting me" while the officers continued to strike Boyle and said "shut the fuck up."  (Ex. B, pp. 71-72).   When Boyle was on his knees and on the ground, Glover saw the Moore and Torres's legs moving and kicking Boyle.  (Ex. H, p. 109).

Boyle stated "I'm not resisting. Please stop kicking me." (Ex. H, p. 109). Moore and Torres kicked Boyle for several minutes. (Ex. H, p. 110). Glover did not see Boyle wrestling with any officers, nor did she see Boyle pick up any of the officers. (Ex. H, p. 115).

41.     Officer Torres got on the radio and called dispatch for assistance (Ex. G, p. 60).

**ANSWER:**     This paragraph is undisputed.

42.     Shortly after Torres called for assistance other University officers began to arrive (Ex. G, p. 64).

**ANSWER:**     This paragraph is undisputed.

43.     After plaintiff refused to produce any identification, Ashley Glover observed plaintiff make a "shoulder roll" to move the officer's hand away (Ex. H, pp. 79-80), which Ms. Glover later described as the plaintiff flailing his shoulder (Ex. H, pp. 87-88).

**ANSWER:**     Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 43. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony does not reflect that Defendants' version of events.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 43. The Plaintiff never refused to produce ID, as shown in Plaintiff's answer to Fact #22 (incorporated herein). Glover testified that the Officer grabbed Boyle by his shirt collar, and Boyle rolled his shoulder back after the Officer grabbed him at which point the officer tried with both hands to push Boyle on top of the squad car. (Ex. H, pp. 80-81).

44.     After the plaintiff "flailed his shoulder," Ms. Glover observed the officer use both hands to try and push the plaintiff in the direction of the squad car and the plaintiff would not

allow himself to move in that direction and, in fact, plaintiff moved farther away from the squad car (Ex. H, pp. 95-96).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 43. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized in several respects regarding the Defendants' version of events.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 44 in part. The Officer was trying to actively push Boyle down onto the hood of the squad car and Boyle took a couple of steps to the right as the officer still was trying to push him. (Ex. H, pp. 95-96.) The officers got Boyle onto the hood of the squad car, when a Hispanic officer hit Boyle with a club and Boyle went down on his knees. (Ex. H, pp. 106-107.)

### VI. Gillespie, Galarza And Kwiatkowski's Arrival In Response To Torres' Call For Assistance

45. Torres made a 10-1 call, which means an officer in distress (Ex. D, p. 14).

**ANSWER:** This paragraph is undisputed.

46. After hearing a 10-1 call, other officers from the University drove to the location (Ex. E, p. 37; Ex. F pp. 12-13).

**ANSWER:** This paragraph is undisputed.

47. Moore and Torres where then involved in a struggle with the plaintiff (Ex. D, pp15-16).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 47. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by

the cited evidence.)  The record is mischaracterized because testimony on record does not reflect a struggle between Boyle, Moore and Torres.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 47.  Boyle went down to the ground as Moore and Torres kicked and hit Boyle.  Boyle said to the officers "I'm not doing anything, please stop hitting me" while the officers continued to strike Boyle and said "shut the fuck up."  (Ex. B, pp. 71-72).   When Boyle was on his knees and on the ground, Glover saw the Moore and Torres's legs moving and kicking Boyle.  (Ex. H., p. 109). Boyle stated "I'm not resisting.  Please stop kicking me."  (Ex. H., p. 109).  Moore and Torres kicked Boyle for several minutes.  (Ex. H., p. 110).


48.     Upon Gillespie's arrival, it appeared to him that the three of them (Torres, Moore and the plaintiff) were thrashing about with Boyle attempting to push Torres and Moore away from him and Torres and Moore attempting to handcuff plaintiff (Ex. D, pp. 18-19).

**ANSWER:**     Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 48.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 48.  After two to three minutes, 3-4 more squad cars arrived at the scene including Gillespie's. (Ex. H., p. 118).  Newly arrived University officers, including Gillespie, ran out of their squad cars and immediately proceeded to run over to and kick Boyle for about one to two minutes. (Ex. H., pp. 116,120,121).  University officers kicked and punched Boyle all over his body, including his neck and chest area, more than 20 times.  (Ex. B, pp. 78-79).   In total, Boyle was kicked and punched for approximately 5 minutes.  (Ex. H, p. 121).

49.     At that time, Gillespie did not know if they were struggling for a weapon (Ex. D, p. 20).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 49.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 48.  After two to three minutes, 3-4 more squad cars arrived at the scene including Gillespie's. (Ex. H., p. 118).  Newly arrived University officers, including Gillespie, ran out of their squad cars and immediately proceeded to run over to and kick Boyle for about one to two minutes. (Ex. H., pp. 116,120,121).  University officers kicked and punched Boyle all over his body, including his neck and chest area, more than 20 times.  (Ex. B, pp. 78-79).   In total, Boyle was kicked and punched for approximately 5 minutes.  (Ex. H, p. 121).

50.     Gillespie heard Torres and Moore tell Boyle stop resisting and were then trying to control the plaintiff.

**ANSWER:**   Plaintiff objects:  Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 50.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 50.  See Plaintiff's Answer to Fact #49, above.

51.     Gillespie ran over to the group and recalled they all fell to the ground (Ex. D, p. 22).

**ANSWER:**  Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 51.  *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 51.  There are conflicting versions of how Boyle got down on the ground from the Defendant officers.  Moore stated that when Torres was against the patrol car, Moore used his body leverage to flip Boyle, Torres and Moore all down to the ground.  (Ex. C, p. 61).  Once on the ground, Moore claims that Boyle started wrestling with Moore and Torres.  (Ex. C, p. 61). Further, as seen in Defendants' Fact #59 below, Officer Galarza claimed to be upon the scene assisting with Torres and Moore when the Boyle, Galarza, Torres and Moore all fell down to the ground.

52.     After Gillespie regained his bearings, Gillespie found he had ended up by Mr. Boyle's legs and feet (Ex. D, p. 23) and once on the ground, Boyle continued to resist with both his arms and his legs (Ex. D, p. 26).

**ANSWER:**  Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 52.  *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph

52.  See Plaintiff's Answer to Fact #49, above.

53.     While Gillespie was on his knees holding the plaintiff's legs, the plaintiff kicked Gillespie in the side of the face causing Gillespie's glasses to be thrown from his face, and mangling the frames of his glasses (Ex. D, p. 27; Ex. E, pp. 19-20; Ex. F, p. 25, 33).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 53.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52.  See Plaintiff's Answer to Fact #49, above.  Kwiatkowski never saw Boyle kick Gillespie in the face, even though he saw Gillespie wearing his glasses.  (Ex. E, pp. 20-21.).  Roberson heard an officer state, "you're lucky this wasn't ten years ago because I would have killed you, you made me break my glasses." (Ex. I, p. 51)

54.     As a result of that kick, Gillespie was hurt. He suffered some slight bruising to his face, but he did not think it required any medical attention (Ex. D, p. 28).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 54.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52.  See Plaintiff's Answer to Fact #53, above.

55.     After being kicked in the face, Gillespie reengaged and continued to hold Boyle by the legs while the officers up top attempted to handcuff him (Ex. D, p. 28).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 55. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #53, above.

56. Gillespie was disoriented from being kicked, and after Boyle was handcuffed, Gillespie, another University officer, started looking for Gillespie's glasses (Ex. D, p. 30; Ex. E, p. 21; Ex F, pp. 32-33); after Gillespie found his broken glasses, he spoke to the watch commander and returned to the station in order to call and get a spare pair of glasses (Ex. D, pp. 37, 40).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 56. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #53, above.

57. When Gillespie arrived on the scene, after observing Boyle apparently resisting arrest, he believed probable cause existed to have Boyle arrested (Ex. D, pp. 52-53).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 57. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #49, above.

58.     Upon Oscar Galarza's arrival, he observed Torres and Moore appeared to be wrestling with a male person in the eastbound lane of 53rd Street (Ex. F, p. 15); Galarza served Officers Moore and Torres attempting to apprehend the subject who was pushing them away and they were wrestling (Ex. F, p. 17).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 58.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 58.  After two to three minutes, 3-4 more squad cars arrived at the scene including Galarza's. (Ex. H., p. 118).  Newly arrived University officers, including Galarza, ran out of their squad cars and immediately proceeded to run over to and kick Boyle for about one to two minutes. (Ex. H., pp. 116,120,121).  University officers kicked and punched Boyle all over his body, including his neck and chest area, more than 20 times.  (Ex. B, pp. 78-79).    In total, Boyle was kicked and punched for approximately 5-10 minutes.  (Ex. H, p. 121).

59.     Galarza went over to assist and attempted to gain control of one of Mr. Boyle's arms (Ex. F, pp. 21, 25, 28); plaintiff was pushing the officers' arms away when all of them fell to the ground (Ex. F, pp. 22-24).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 59.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D.

Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52.  See Plaintiff's Answer to Fact #58, above.

60. Galarza heard Officers Moore and Tones say stop resisting to Boyle (Ex. F, pp. 21-22); Galarza does not know what caused all of them to fall to the ground (Ex. F, p. 24).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 60.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52.  See Plaintiff's Answer to Fact #58, above.

61. Galarza was attempting to assist the officers getting Boyle into handcuffs (Ex. F, p. 26); while they were on the ground, Tones got so tired he had to step aside for a second and then Galarza gained control of one of Boyle's arms (Ex. F, p. 25); while on the ground, Galarza told Mr. Boyle to stop resisting (Ex. F, p. 30); Boyle continued to struggle while he was on the ground until he was placed in handcuffs (Ex. F, p. 36); after Boyle was on the ground, he was eventually placed in handcuffs (Ex. F, p. 29).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 61.  *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by

the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

62. The plaintiff injured Officer Galarza's right shoulder during the incident (Ex. F, p. 25).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 62. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

63. Galarza's shoulder was injured when Boyle pulled his arm (Ex. F, p. 37).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 63. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

64. Galarza subsequently went to the University of Chicago emergency room where his shoulder was x-rayed, he was placed on pain medication, told to see an orthopedic doctor for follow-up and told to use ice packs (Ex. F, pp. 39-40, 61-62).

**ANSWER:** This paragraph is undisputed.

65. When Kwiatowski arrived, he saw Galarza, Tones, Gillespie and Moore were attempting to place Boyle in handcuffs (Ex. E, pp. 16-17); Boyle was then facedown with his stomach on the ground and Kwiatowski observed that Boyle was kicking and struggling, he was wiggling his arms to try and break free (Ex. E, pp. 18-19).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 65. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

66. Kwiatkowski observed Boyle kicking violently and saw Boyle's legs go up in the air and saw Boyle kick in Gillespie's direction (Ex. E, pp. 19-20).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 66. *See* Nair v. Principi, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

67. Kwiatowski helped maintain control of Mr. Boyle's arms until the handcuffs were placed on him (Ex. E, p. 22); once Boyle stood up from the ground, Kwiatowski then left the scene and went back to his regular duties (Ex. E, pp. 27-28).

**ANSWER:** Plaintiff objects: Defendant has mischaracterized the evidence in the record. Plaintiff moves to strike paragraph 67. *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.) The record is mischaracterized because the testimony on record does not indicate the facts as stated.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 52. See Plaintiff's Answer to Fact #58, above.

68. It is proper to place a person in handcuffs when necessary to protect an officer's safety (Ex. E, p. 49).

**ANSWER:** Plaintiff objects: The alleged facts are vague and irrelevant to the material issues of the case. Thus, Plaintiff moves to strike paragraph 68. According to the testimony of Boyle, Glover and Roberson, at no time did Boyle endanger the safety of the University officers.

However, without waiving said objection, Plaintiff does not dispute the facts alleged in paragraph 68.

69. It is not lawful or permissible to resist an officer's arrest (Ex. F, p. 63).

**ANSWER:** This paragraph is undisputed.

### VII. Other Stops Of Glover's Vehicle And Requests For Her Identification

70. On one other occasion when Ashley Glover was driving her car on the 1-57 expressway, the vehicle's horn started to blare and she pulled over with a state trooper who was investigating whether there was a problem (Ex. H, pp. 52-53); on that occasion the state trooper asked Ms. Glover for identification, which she produced, and there was no problem. The officer advised her to get off the expressway and drive on the street for safety reasons (Ex. H, pp. 5354).

**ANSWER:** This paragraph is undisputed.

## VIII. Color Of Law

71.     The duties and responsibilities of the University of Chicago defendants are to patrol and maintain the safety and security of the University campus, as well as its faculty, staff and students (Ex. E, pp. 10, 11; Ex. F, p. 11).

**ANSWER:**   This paragraph is undisputed.

72.     University of Chicago officers will detain a suspect and wait for City of Chicago police officers to arrive, University officers do not make arrests (Ex. E, p. 38; Ex. F, p. 55; Ex. J, p. 27); City of Chicago police officers actually make the arrest, process the arrest and prepare arrest reports (Ex. E, p. 38; Ex. J, p. 27); University officers do not fill out criminal complaint forms (Ex. C, p. 118); someone other than the University officer decides what charges are placed against a person who was arrested by City of Chicago police (Ex. A, p. 118); typically, an Assistant State's Attorney during the felony review process determines whether or not felony charges will be placed against an arrestee and University officers are not involved in felony charging decisions (Ex. A, pp. 118, 119); in this instance, City of Chicago police officer Carl Martin completed the complaint against the plaintiff without ever speaking to Officers Moore or Torres (Ex. J, pp. 22, 44).

**ANSWER:**   Plaintiff objects: Defendant has mischaracterized the evidence in the record.  Plaintiff moves to strike paragraph 72.  *See* <u>Nair v. Principi</u>, 2005 WL 1850358 *2 (N.D. Ill. Aug 10, 2005) (Where the Court agrees that statements of facts are misleading or mischaracterize the evidence, it is appropriate for the Court to disregard facts not supported by the cited evidence.)  The record is mischaracterized because Officer Martin spoke to Moore and Torres before filling out the complaint against the Plaintiff, which is signed by both Martin and Torres.

However, without waiving said objection, Plaintiff disputes the facts alleged in paragraph 72 in part.  Specifically, City Officer Darling spoke to Moore and Torres at the 21st District Station and Moore and Torres provided details regarding the events of October 18, 2008 to

Darling. Officers Moore and Torres also both testified against the Plaintiff in his criminal case on January 20, 2009. *See* Pl Facts, ¶¶16-18, 20.

73. University of Chicago officers are not allowed to make stops for traffic offenses (Ex. E, p. 47), or write traffic tickets (Ex. p. 131), or participate in narcotics investigations. (Id.).

**ANSWER:** This paragraph is undisputed.

74. The University of Chicago does not have a lockup and their officers are not allowed to take individuals into custody at the University of Chicago's security facility, they detain individuals and notify the Chicago Police Department and then turn them over to Chicago police (Ex. E, p. 47).

**ANSWER:** This paragraph is undisputed.

75. University of Chicago police officers are not permitted to carry OC or pepper spray, nor are they permitted to carry "billyclubs" or the big Kel brand flashlights that are approximately 16 to 20 inches long (Ex. D, p. 52; Ex. E, pp. 45-46).

**ANSWER:** This paragraph is undisputed.

76. The areas that the University of Chicago officers patrol are also patrolled by the Chicago Police, and there are no areas of the University that the University's officers patrol that the City of Chicago police do not patrol (Ex. E, p. 48; Ex. Q p. 131-32).

**ANSWER:** This paragraph is undisputed.

77. The University of Chicago police officers have not been delegated an exclusive public function to patrol any areas of the University of Chicago's campus or the City of Chicago that the Chicago police are not authorized to patrol (Ex. E, p. 48; Ex. G, p.131-32).

**ANSWER:** Plaintiff disputes the facts alleged in paragraph 77. The University of Chicago Police Department has been delegated "the powers of municipal peace officers and county sheriffs, including the power to make arrests … for violations of state statutes, municipal

or county ordinances, " with the limitations that those "powers may be exercised only on college or university property, for the protection of students, employees, visitors and their property, and the property of the college or university" pursuant to 110 ILCS 1020/1.

78.     The University of Chicago officers have not been delegated the exclusive authority to do anything which the City of Chicago police officers are not permitted to perform, and there are certain activities that the University officers are not permitted to perform that the City of Chicago police perform (Ex. E, pp. 48-49).

**ANSWER:**   Plaintiff disputes the facts alleged in paragraph 78.  The University of Chicago Police Department has been delegated "the powers of municipal peace officers and county sheriffs, including the power to make arrests … for violations of state statutes, municipal or county ordinances, " with the limitations that those "powers may be exercised only on college or university property, for the protection of students, employees, visitors and their property, and the property of the college or university" pursuant to 110 ILCS 1020/1.

79.     University of Chicago officers have not been provided full police powers (Ex. E, p. 48; Ex. G, p. 131).

**ANSWER:**   Plaintiff disputes the facts alleged in paragraph 79.  The University of Chicago Police Department has been delegated "the powers of municipal peace officers and county sheriffs, including the power to make arrests … for violations of state statutes, municipal or county ordinances, " with the limitations that those "powers may be exercised only on college or university property, for the protection of students, employees, visitors and their property, and the property of the college or university" pursuant to 110 ILCS 1020/1.

### IX. Post Incident Photos Of Plaintiff

80.     The photos of Charles Boyle attached hereto as Ex. K, were taken either at the

Chicago Police Station or shortly after his release and those photos truly and accurately depict

plaintiff's condition following the incident which is the subject matter of this lawsuit (Ex. B, pp.

81, 83, 84, 105-06; Ex. H, pp 145, 147, 148).

**ANSWER:**   This paragraph is undisputed.


BY:     s/ Jonathan R. Ksiazek
        Jonathan R. Ksiazek
        ED FOX & ASSOCIATES
        Attorneys for Plaintiff
        300 West Adams, Suite 330
        Chicago, Illinois 60606
        (312) 345-8877
        jksiazek@efox-law.com

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 09 C 1080 |
| | ) | |
| v. | ) | JUDGE BUCKLO |
| | ) | |
| UNIVERSITY OF CHICAGO, *et al*. | ) | MAGISTRATE JUDGE DENLOW |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

To:     Steven Puiszis                        Helen C. Gibbons
        Hinshaw & Culbertson            Assistant Corporation Counsel
        222 North LaSalle Street          30 N. LaSalle Street, Suite 1400
        Suite 300                              Chicago, IL 60602
        Chicago, IL 60601-1081

**PLEASE TAKE NOTICE** that on May 6, 2010, the undersigned filed with the Clerk of this Court, **PLAINTIFF'S RESPONSE TO THE UNIVERSITY OF CHICAGO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**, service of which is being made upon you.

                                                s/Jonathan R. Ksiazek
                                                Jonathan R. Ksiazek
                                                ED FOX & ASSOCIATES
                                                300 West Adams, Suite 330
                                                Chicago, IL 60606
                                                (312) 345-8877

## PROOF OF SERVICE

I, Jonathan R. Ksiazek, an attorney, under penalty of perjury, and state that on May 6, 2010, service is being made in accordance with the General Order on Electronic Case Filing section XI.

                                                s/Jonathan R. Ksiazek
                                                Jonathan R. Ksiazek